Aaron KRONFELD, et al., Plaintiffs,

v.

FIRST JERSEY NATIONAL BANK, First National State Bank of NJ, Flagship Securities, Inc. Halpert, Oberst & Co., Gibralter Securities Co., Liss, Tenner & Goldberg, Inc. McDonald & Co. Securities, Inc., et al., Defendants.

Civ. No. 85–2929.

United States District Court, D. New Jersey.

June 20, 1986.

Neal F. Hooley, Hooley, Butler, Di Francesco & Kelly, Westfield, N.J., for plaintiffs.

Robert M. Axelrod, Sills, Beck, Cummins, Zuckerman, Radin, Tishman & Epstein, Newark, N.J., for First Nat. State Bank of N.J., Flagship Securities, Halpert, Obsert & Co., Liss, Tenner & Goldberg, Inc., Mid-State Securities, R.W. Peters, Rickel & Co., Inc., Municipal Investors & McDonald & Co. Securities, Inc.

James R. Van Horn, First Jersey Nat. Corp., Jersey City, N.J., for defendant First Jersey Bank.

Brian N. Lokker, Williams, Caliri, Miller & Otley, Wayne, N.J., for defendants Ryan, Beck & Co., Inc. and John J. Ryan Co.

Zulima V. Farber, Lowenstein, Sandler, Brochin, Kohl Fisher, Boylan & Meanor, Roseland, N.J., for Gibraltar Securities and J.B. Hanauer & Co.

## OPINION

HAROLD A. ACKERMAN, District Judge.

This litigation arises from the largest default on municipal bonds in American history. The bonds, $2.25 billion of which were sold on the public market, were issued by the Washington Public Power Supply System ("WPPSS") from 1977 to 1981 to finance two nuclear power plants in the State of Washington. Approximately 1400 purchasers of the bonds have brought suit here and in 21 similar actions across the nation against the underwriters and sellers of the bonds. The factual background as alleged by plaintiffs can be briefly stated. The WPPSS is a municipal corporation which constructs and operates electric power generating and transmission plants and facilities in the State of Washington. In 1968, WPPSS, the Bonneville Power Administration ("BPA"), a federal agency, and some local utilities undertook the construction of three nuclear power plants and financed them through the issuance of WPPSS revenue bonds. The bonds were through a "net billing" arrangement, effectively guaranteed by BPA. In 1973, the group decided to build a fourth and fifth nuclear plant ("Plants 4 and 5") which would be financed by WPPSS bonds, backed by "Participants Agreements" between the utilities—but not the BPA—to guarantee them. These bonds were marketed approximately form 1977 to 1981, during the time when the bonds financing the first three nuclear plants were also marketed. Despite the differences in the guarantees of the bonds, the bonds for Plants 4 and 5 were issued and marketed in a way similar to the other bonds. Almost from their inception, the Plant 4 and 5 projects were beset by poor planning, scheduling delays, cost overruns and ineffective management. In January 1982, the participating utilities terminated construction on Plants 4 and 5 before they were completed. Then, in June 1983, the Washington Supreme Court ruled that certain of the participating utilities lacked authority to guarantee the debts on Plants 4 and 5.

Shortly, thereafter, the Participating Agreements were held to be unenforcible and the utilities were relieved of their obligation to guarantee the bonds relating to the projects. The project were formally dissolved in July 1983. BPA later informed the bondholders that it had not guaranteed the bonds for Plants 4 and 5. *See* Amended Complaint ¶¶ 8–25.

This suit has been brought by 1400 plaintiffs from across the nation who purchased Plant 4 and 5 bonds from 1977 to 1983. Defendants are the sellers and underwriters of the bonds who transacted business in this district, or who sold bonds to purchasers residing in this district. The proposed amended complaint asserts claims for conspiracy to violate and violations of Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) (1981) and Rule 10b–5, 17 C.F.R. § 240.10b–5 (1985), for violations of the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), 18 U.S.C. § 1962(a) through (d), and for negligent representation, fraud and deceit, and breach of fiduciary duties in violation of state law. Similar suits have been brought by the plaintiffs against other defendants in districts all over the nation.

Plaintiffs initially moved to consolidate all cases in one district for pre-trial proceedings under 28 U.S.C. § 1407. On October 2, 1985, the Judicial Panel on Multidistrict Litigation denied the motion to transfer, not persuaded that common questions of fact predominate over individual questions of fact. Meanwhile, two defendants, Gibralter Securities and J.B. Hanauer & Co., filed answers.

Defendants Flagship Securities, Municipal Investors Service, Inc.; Mid-State Securities Corp.; First Fidelity Bank; Fiss Tenner & Goldberg, Inc.; R.W. Peters, Rickel Co., Inc.; Halpert, Oberst and Co.; McDonald & Co. Securities ("Flagship Securities defendants") originally moved to dismiss the complaint under Rule 12(b)(6) and 9(b) and for the award of attorneys' fees under Rule 11. First Jersey National Bank joined this motion. Defendants Ryan, Beck

& Co. and John J. Ryan & Co. made essentially the same motion, as did defendants J.B. Hanauer & Co. and Gibralter Securities Co. Most recently, plaintiffs have moved to amend their complaint under Rule 15(a). Flagship Securities defendants have refiled their motion to dismiss under Rule 12(b)(6). Since the proposed amended complaint may cure some of the defects raised by the defendants' motion to dismiss, the Court will first address the motion to amend.

Federal Rule of Civil Procedure 15(a) provides that a party may amend a pleading once as a matter of course before a responsive pleading is served; otherwise, a party may amend only by leave of court or by consent. Such leave "shall be freely given when justice so requires." Fed.R. Civ.Pro. 15(a). The Supreme Court has enumerated the circumstances under which leave to amend may be denied: "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, etc.—the leave sought should, as the rules require, be "freely given." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

 Only defendants J.B. Hanauer & Co. and Gibralter Securities Co. have filed answers before the motion to amend. The motions to dismiss filed by other defendants do not constitute a "responsive pleading" so as to bar a party from amending as a matter of course. Fed.R.Civ.Pro. 7(a); *Neifeld v. Steinberg,* 438 F.2d 423, 425 n. 3 (3d Cir.1971). Thus, the plaintiffs may, as a matter of right, amend their claims against those defendants who have not answered.

They must have leave of the court, however, to amend their claims against the two defendants who have answered. It does not appear that the amendment would cause undue delay or that plaintiffs have a dilatory motive. This litigation is in its earliest stages and hardly any discovery or pre-trial preparation has taken place. Plaintiffs assert that the amendments incorporate new evidence they became aware of after the filing of the complaint and simplify the complaint as a whole. The only conceivable prejudice to defendants is that two defendants may have to file an additional answer and defendants had to file an unnecessary motion to dismiss. Defendants seek the award of such costs. But the motion to dismiss is not rendered moot by the amendment, as defendants themselves state in their memorandum in opposition to the motion for leave to amend, which states: "The amended complaint suffers from exactly the same defects as the original complaint ..." (Joint Memorandum of Defendants, at p. 2.) Defendants raise the same legal argument in this memorandum as they did in their memoranda in support of their original motion to dismiss and rely on previous briefs submitted on some issues. The Court finds no significant prejudice to defendants who have not answered if leave to amend is granted. But the costs of defendants Gibralter Securities and J.B. Hanauer in preparing their first answer shall be compensated by plaintiffs. Movants primary opposition is that this proposed amended complaint also cannot withstand the motion to dismiss, and therefore leave to amend would be futile. *See Massarsky v. General Motors Corp.,* 706 F.2d 111, 125 (3d Cir.1983), *cert. denied* 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1984). Since the same basic legal challenges are raised to the first complaint and the proposed amendments, the Court will treat the motions to dismiss as addressed to the proposed amended complaint. Plaintiffs' leave to amend is granted.

The proposed amended complaint consists of six counts. Count 1 is brought on behalf of all (approximately) 1400 plaintiffs, against defendants J.B. Hanauer & Co.; Halpert, Oberst & Co.; Gibraltar Securities Co.; R.W. Peters, Rickel & Co., Inc.; and John J. Ryan & Co. (referred to in amended complaint as "conspirator de-

fendants"). It alleges that these defendants who were members of the underwriting group that directly marketed the bonds at issue to the public, conspired with 52 "co-conspirators" (listed in Exhibit 3 to the Amended Complaint), who were also members of the underwriting group but are not defendants in this suit, to violate Section 10(b) and Rule 10b–5 of the Securities Act. The gravamen of the claim is that these conspirators practiced fraud on plaintiffs by knowingly or recklessly making misrepresentations of material facts and omissions to state material facts about the bonds and the status of the Plant 4 and 5 projects in connection with the sale of the bonds. Specifically, conspirators misrepresented or omitted to state the fact that the bonds for Plants 4 and 5 were not backed by the state or federal government, as were the bonds for Plants 1, 2 and 3; and that the Plant 4 and 5 projects were misplanned, mismanaged, and plagued by cost overruns and delays. The purpose and effect of this scheme was to artificaly inflate the market for the bonds and induce plaintiffs to invest in the bonds, which resulted in their injury.

Count II, also brought by all plaintiffs against the conspirator defendants, alleges that the underwriters' (conspirator defendants and co-conspirator) marketing and sales of the bonds through misrepresentations and omissions constituted an "enterprise" and their acts constituted a "pattern of racketeering," as defined by RICO. The income derived from these activities alleged were used in the establishment, maintenance of control, and conduct of the affairs of enterprise, in violation of 18 U.S.C. § 1962(a)-(d).

Counts III, IV, V, VI are brought only by plaintiffs who purchased bonds from one of the 16 named defendants (referred to in Amended Complaint as "purchasing plaintiffs"). Count III alleges that defendants individually violated Section 10(b) and Rule 10b–5 by knowingly or recklessly making the misrepresentations and omissions described in Count 1 in connection with the sale of bonds to purchasing plaintiffs. That conduct is also the basis for the claims of negligent misrepresentations (Count IV), fraud (Count V) and breach of fiduciary duty (Count VI).

When assessing a Rule 12(b) motion to dismiss, the Court must accept as true all factual allegations in the complaint and view them in a light most favorable to plaintiff. *DP Enterprises, Inc. v. Bucks County Community College*, 725 F.2d 943, 944 (3d Cir.1984); *Eberts v. Westinghouse Electric Corp.*, 581 F.2d 357, 359 (3d Cir. 1978). A complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1969).

The parties have also submitted some documents outside the complaint for the Court's consideration. For example, plaintiffs have submitted the affidavit of Michael Hausfeld, plaintiffs' counsel, attesting to the reasonableness of the inquiry made before the complaint was filed; defendants' submission of newspaper and magazine pieces detailing the travails of WPPS project (*see* exhibits to J.B. Hanauer & Co. and Gibraltar Securities Co.'s Memorandum in Support of Motion to Dismiss); plaintiff's submission of confirmation of stock purchases by two plaintiffs (*see* Exhibits D and E to Plaintiff's Memorandum in Opposition to Motion to Dismiss to J.B. Hanauer & Co. and Gibraltar Securities Co.).

■ When the Court considers these documents in determining whether the complaint fails to state a claim, it must treat the motion to dismiss as one for summary judgment. Fed.R.Civ.P. 12(b). Summary judgment will only be granted if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The party moving for summary judgment must demonstrate the absence of all genuine issues of material fact. *Adickes v. S.H. Kress Co.*, 398 U.S. 144, 153, 90 S.Ct. 1598, 1606, 26 L.Ed.2d 142

(1970). The court must construe all of the allegations and evidence in a light most favorable to the party opposing the motion and must resolve any doubts about the existence of genuine issues of fact against the moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Sunshine Books, Ltd. v. Temple University*, 697 F.2d 90, 95 (3d Cir.1982).

■ Defendants initially contend that the fraud claims in the complaint do not meet the requirements of Rule 9(b) and thus should be dismissed.[1] Rule 9(b) reads in part "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." This requirement of particularity has been applied to fraud allegations under the federal acts as well as state law. *Goldman v. Belden*, 754 F.2d 1059, 1069 (2d Cir.1985); *Haroco, Inc. v. American Nat. Bank and Trust Co. of Chicago*, 747 F.2d 384, 403 (7th Cir.1984), *aff'd* — U.S. —, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985); *Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96, 99 (3d Cir.1983); *McKee v. Pope Ballad Shepard & Fowle, Ltd.*, 604 F.Supp. 927, 928–31 (N.D.Ill. 1985); *Seiler v. E.F. Hutton & Co.*, 102 F.R.D. 880, 886 (D.N.J.1984).

The allegations of fraudulent misrepresentations and omissions in the amended complaint are structured in a novel fashion. Exhibit 1 to the amended complaint lists the names of broker/dealers or banks (including defendants here) which sold WPPSS bonds relating to Plant Nos. 4 and 5 ("bonds"), the plaintiffs to which they sold the bonds, the home state of these plaintiffs, the date of purchase of the bonds, and the face amount of the bonds. Amended Complaint, ¶ 4.

Exhibit 4 to the amended complaint allegedly contains some of the specific misrepresentations and omissions made by 13 of the defendants to some of the plaintiffs. It has five columns (headed 'A', 'B', 'C', 'D', 'E') and with respect to each of the plaintiffs, one or more of the columns are checked. It contains the following legend, entitled "Defendants' Misrepresentations to Plaintiffs:"

A. I was told that these bonds were backed by the Federal Government.

B. I was told that these bonds were backed by the BPA.

C. I was told that these bonds were backed by Washington State.

D. It was "implied" to me that these bonds were backed by a federal agency or Washington State.

E. I was told that the safety and backing of our bonds were the same as that of WPPSS 1, 2 and 3.

Complaint, Exhibit 4.

Count I also alleges generally that conspirator defendants and co-conspirators did not disclose to plaintiffs that the entities participating in the Plants 4 and 5 project did not have authority to unconditionally guarantee the debt; that the project power requirements were unreliable and inflated; that cost overruns occurred along with schedule delays, that the project management was inadequate, that BPA did not guarantee the project debt or have authority over the project. Amended Complaint ¶ 39.

Defendants/movants contend these fraud allegations are insufficiently particular in the following respects. The allegations of misrepresentations do not indicate the specific contents of the fraudulent misrepresentations or where, when, by whom, or how the misrepresentations were made. Nor do the allegations concerning the ma-

---

**1.** Apparently, some motions and arguments similar to those in this case have been raised in the "sister" *Kronfeld* actions in other courts. According to the parties, motions to dismiss have been denied in three cases (*Kronfeld v. American Nat. Bank of Austin*, Civ. No. H–85–3449 (S.D.Tex. Jan. 3, 1986); *Kronfeld v. Miller, Schroeder Municipals, Inc.*, Civ. No. CV–85–

3915R (C.D.Cal. Nov. 5, 1985); *Kronfeld v. Bartlett & Co.*, Civ. No. C–1–85–1107 (S.D.Ohio Oct. 22, 1985)) and granted in one (*Kronfeld v. Advest Inc.*, Civ. No. 85–4673 (S.D.N.Y.1985)). None of these courts, however, have presented any detailed discussion of the issues and thus are of little assistance here.

terial omissions committed by defendants include specific allegations about which representations suffered from these omissions or the factual basis of defendants' duty to disclose that information to plaintiffs. Additionally, no facts are alleged to support the allegations that defendants knew or recklessly disregarded the falsity of their representations or deception resulting from their omission.

■ The special pleading requirements embodied in Rule 9(b) derive "from the historically disfavored status of fraud claims at common law." Note, Pleading Securities Fraud Claims With Particularity Under Rule 9(b), 97 Harv.L.Rev. 1432, 1433 (1984). Three policies have generally been said to underlie this special treatment of fraud claims: (1) Ensuring plaintiff has investigated and reasonably believes a fraud has occurred, (2) providing adequate notice to defendants so that they can respond to this claim, and (3) protecting the reputation of defendants. *Seville Indus. Machinery v. Southwest Machinery*, 742 F.2d 786 (3d Cir.1984), *cert. denied*, — U.S. ——, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985); Sovern, Reconsidering Federal Civil Rule 9(b); 104 F.R.D. 143, 164 (1984).

The Third Circuit, however, has recently admonished that when applying Rule 9(b), "focusing exclusively on its particularity language 'is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules.'" *Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96, 100 (3d Cir. 1983) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1298, at 407 (1969)). Rule 8's general requirement that a pleading only contain "a short and plain statement of the claim" must also be given effect. Fed.R.Civ.P. 8(a).

■ Defendants refer to caselaw, largely from the Second Circuit, holding that fraud claims must specifically allege the exact representations that were made or not made, in what documents or conversations they appeared, and where, when, and to whom they were made. Memorandum of Law of Defendants Halpert, Oberst

and Co., et al., at pp. 13–14; *see, e.g.,* *Goldman v. Belden*, 754 F.2d at 1069–70; *Wayne Inv., Inc. v. Gulf Oil Corp.*, 739 F.2d 11, 13 (1st Cir.1984); *Barclays Bank of New York v. Goldman*, 517 F.Supp. 403, 415 (S.D.N.Y.1981). A great deal of caselaw adopts such requirements. The Third Circuit, however, has moved toward a more lenient application of Rule 9(b). This approach can be gleaned from its recent decision in *Seville Indus. Machinery v. Southmost Machinery, supra.* In that case, the plaintiffs alleged fraud on the part of the defendants when they made four misrepresentations, each in connection with the sale or purchase of several pieces of industrial machinery. The district court dismissed these allegations under Rule 9(b) because they did not state with minimal particularity the details of the fraud, including the date, time and place of the alleged misrepresentations. 567 F.Supp. 1146, 1156 (D.N. J.1983). The Third Circuit reversed the dismissal, reasoning as follows:

> We approach this question mindful of our recent admonition that in applying Rule 9(b), 'focusing exclusively on its "particularity" language 'is to take account of the general simiplicity and flexibility contemplated by the rules.'" *Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96, 100 (3d Cir.1983) (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1298, at 407 (1969)). We conclude that the district court subjected Seville's allegations of fraud to too strict a scrutiny. Rule 9(b) requires plaintiffs to plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior. It is certainly true that allegations of 'date, place or time' fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud. In the

present case, Seville adequately satisfied the requirements of Rule 9(b) by incorporating into the complaint a list identifying with great specificity the pieces of machinery that were the subject of the alleged fraud. Moreover, Seville divided this list into five 'exhibits' and identified which pieces of equipment were the subject of which alleged fraudulent transaction. The complaint sets forth the nature of the alleged misrepresentations, and while it does not describe the precise words used, each allegation of fraud adequately describes the nature and subject of the alleged misrepresentation. In sum, we conclude that Seville has alleged the fraud-based offenses with sufficient particularity to withstand a motion to dismiss under Rule 9(b). (footnote omitted)

*Id.,* 742 F.2d at 791. Likewise, while not alleging the factual context or exact words of the misrepresentations, the complaint here does describe the nature and subject of the representations at issue with some specificity. In the exhibits to the complaint, it states the dates of the securities purchases in connection with which the representations were made, the buyer and seller of the securities and the specific amount of the stock purchased. Another exhibit specifies which misrepresentations were made by individual defendants. The complaint does not make sweeping allegations that all defendants committed one fraud, as defendants suggest.

District courts in this Circuit subsequently have applied the *Seville* Court's reading of Rule 9(b). *Markovich v. Vasad Corp.,* 617 F.Supp. 142, 145 (E.D.Pa.1985); *Binkley v. Scheaffer,* 609 F.Supp. 601, 603–04 (E.D.Pa.1985); *Alfaro v. E.F. Hutton & Co., Inc.,* 606 F.Supp. 1100, 1107–10 (E.D. Pa.1985); *McClendon v. Continental Group, Inc.,* 602 F.Supp. 1492, 1509 n. 10 (D.N.J.1985); *Thomas v. Tramiel,* 105 F.D.R. 568, 571–72 (E.D.Pa.1985). *Alfaro* is especially instructive in the present case. There, a class of approximately eighty plaintiffs brought securities fraud and RICO claims against defendant for alleged misrepresentations made to them in connec-

tion with the sale of securities. The Court, addressing a motion to dismiss under Rule 9(b) similar to one at issue here, referred to *Seville* and to other caselaw holding (1) when the transactions are numerous and take place over an extended period of time, less specifity in pleading of fraud is required, *In re Catanella and E.F. Hutton and Co. Securities Litigation,* 583 F.Supp. 1388, 1389 (E.D.Pa.1984); *see also Hirt v. UM Leasing Corp.,* 614 F.Supp. 1066, 1072 (D.Neb.1985); *General Acc. Ins. Co. of America v. Fidelity and Deposit Co. of Maryland,* 598 F.Supp. 1223, 1232 (E.D.Pa. 1984); (2) where the complaint presents the claims of a class and individual identification of the circumstances of the fraud as to each class member would require voluminous pleadings, less specificity is required, *In re Caesars Palace Securities Litigation,* 360 F.Supp. 366, 388 (S.D.N.Y.1973). The complaint in *Alfaro* alleged six "different types of [oral] misrepresentations" made to the eighty plaintiffs in a format similar to that in the amended complaint here. The Court concluded:

> Although these [representations] are not presented verbatim as they were stated to the plaintiffs, these allegations are more than sufficient to put Hutton on notice of the nature of the misrepresentations which it is alleged to have made. Because these misrepresentations were allegedly made to approximately eighty potential plaintiffs in different parts of the country and were not made in writing, it would be unduly burdensome to demand the plaintiffs state the date on which each such representation was made, the times of such representations and the specific locations involved.

The same district court has held in another Rule 10b–5 case that when pleading a claim based on defendant's omission of material facts, plaintiff need not specify each document which contained these omissions. *Thomas v. Tramiel,* 105 F.R.D. 568, 572 (E.D.Pa.1985); *see also DuPont v. Wyly,* 61 F.R.D. 615, 631–32 (D.Del.1973). "Such a claim inherently involves every document through which defendants communicated

with their investors." *Thomas*, 105 F.R.D. at 573. Plaintiffs need only allege particularly what information has been concealed, which has been done in ¶ 37 of the amended complaint.

Under the Third Circuit's current functional and flexible approach to Rule 9(b), the fraud allegations in the Amended Complaint are sufficient to meet its particularity requirements. Considering the large number of parties, the long time period involved, and the different circumstances of the alleged misrepresentations and omissions, less particularity in pleading some of the elements is necessary and desirable. The subject of the alleged fraud—the bond purchases—are identified with great specificity, as in *Seville*. *See* Exhibit 1 to Amended Complaint. These allegations provide enough specifics to put defendants on notice of the claims against them and the basic transactions upon which they are based. They are particular enough for defendants to file responsive pleadings to the complaint, one of the main purposes of Rule 9(b). Indeed, as previously noted, two defendants have already filed answers to the allegations in the complaint. Moreover, the allegations are specific enough to demonstrate plaintiffs have investigated the alleged fraud and reasonably believe a wrong has occurred. *See* Affidavit of Michael D. Hausfeld. It cannot be said at this stage that plaintiffs have brought a strike suit or a suit containing spurious charges of immoral and fraudulent acts in order to injure the reputation of defendants. The fraud allegations in the complaint also comply with Rule 8's requirement that a pleading be a brief, plain statement of facts and claims, which need only give notice and not plead all evidence in support of the claim. Fed.R.Civ.Pro. 8(a).

Thus, the allegations of fraud contained in Count I are stated with sufficient particularity, since these allegations are expressly incorporated in the other counts, both those under federal and state law, these other counts sufficiently allege fraud or negligent misrepresentation for purposes of Rule 9(b).

Defendants additionally contend that the Section 10(b) and Rule 10b–5 claims fail to state certain required elements. First, they do not sufficiently allege the requisite scienter or state of mind of defendants when they engaged in the conduct alleged. These counts allege generally that defendants "had actual knowledge of the materially false and misleading statements and omissions set forth above or acted with reckless disregard for the truth." Amended Complaint, ¶¶ 40, 61. This language accurately states the degrees of knowledge necessary to establish a Section 10(b) and Rule 10b–5 cause of action in this Circuit. In *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1977), the Supreme Court decided that "intentional" misconduct was a necessary element of such a claim. *Id.* at 215, 96 S.Ct. at 1391. While it expressed no opinion about whether reckless behavior sufficed, *id.* at 194 n. 12, 96 S.Ct. at 1381 n. 12, the Third Circuit has subsequently held that such state of mind does suffice. *Coleco Industries, Inc. v. Berman*, 567 F.2d 569, 574 (3d Cir.1977), *cert. denied*, 439 U.S. 830, 99 S.Ct. 106, 58 L.Ed.2d 124 (1978), *reh. denied*, 439 U.S. 998, 99 S.Ct. 601, 58 L.Ed.2d 671. Defendants argue, however, that the complaint fails to particularize the factual basis for the allegations that defendants knew or recklessly disregarded the falsity of their representations.

The Court rejects this contention of lack of particularity. Federal Rule 9(b) states the requirement that fraud claims must be pleaded with particularity and provides that "Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.Pro. 9(b). The majority of the caselaw, including that in this Circuit, has applied this latter provision to the making of allegations concerning a defendant's state of mind in a fraud claim. *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 (1st Cir.1980); *Walling v. Beverly Enterprises*, 476 F.2d 393, 397 (9th Cir.1973); *Alfaro*, 606 F.Supp. at 1105; *Klein v. Computer Devices, Inc.*,

591 F.Supp. 270, 279 (S.D.N.Y.1984); *Caliber Partners, Ltd. v. Affeld,* 583 F.Supp. 1308, 1311 (N.D.Ill.1984); *Denny v. Carey,* 72 F.R.D. 574, 580 (E.D.Pa.1976). *But see Decker v. Massey-Ferguson, Ltd.,* 681 F.2d 111, 119–20 (2d Cir.1982) (allegations that defendants failed to furnish "required factual predicate of knowledge"); *Deutsch v. Flannery,* 597 F.Supp. 917, 921 (S.D.N.Y. 1984). In *Alfaro,* a district court in this Circuit held that a similar conclusory allegation of defendants' scienter in a Section 10(b) claim was sufficient in light of Rule 9(b). *Alfaro,* 606 F.Supp. at 1105. Alternatively, even if the rule required allegations of fraud claims to include factual circumstances to substantiate defendants' alleged knowledge or intent, plaintiffs arguably have met such requirement. The amended complaint contains the following allegation stating the basis of its assertion of defendants' knowledge:

> 33. Due to their position as members of the underwriting group for the various issues of the bonds for Project Nos. 4 and 5, the conspirator defendants knew or recklessly disregarded information and sources of knowledge and information concerning the true facts on Project Nos. 4 and 5. The conspirator defendants and the co-conspirators served as advisors to the Supply System for the marketing of the bonds; participated in investigations of the Supply System and Projects 4 and 5; were directly involved with the financing of the projects and the bonds; participated in meetings with the staff and management of the Supply System; had access to non-public information concerning the true need for and feasibility of the projects; participated in due diligence investigations and meetings; had access to non-public information concerning the security for payment of the bonds and the truth of the purported guarantees of the bonds by the Participants and/or BPA and/or any other federal or state agency or other entity; and participated in the preparation of documents essential to the marketing and selling of the bonds.

Amended Complaint, ¶ 33. Thus, the pleading containing factual circumstances from which can be inferred defendants' requisite knowledge of, or reckless disregard of, the false representations alleged.

 The causes of action under Section 10(b) and Rule 10b–5 are also deficient, according to defendants, in other respects. First, there are no allegations that the fraudulent misrepresentations or omissions occurred before or "in connection with the purchase or sale" of a security, as required by Section 10(b). 15 U.S.C. § 78j(b) (1981); *Cramer v. General Telephone & Electronics Corp.,* 582 F.2d 259, 170–71 (3d Cir. 1978), *cert. denied,* 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 90 (1979). This very language of the act, however, is expressly alleged in the Section 10(b) counts. For example, Count 1 alleges that the conspirator defendants and co-conspirators, "in connection with the sale of bonds for Projects 4 and 5," made "in connection with the bonds, misrepresentations of material fact and omitted to state material facts necessary to make the statements made, in light of the circumstances in which they were made, not misleading." Amended Complaint, ¶ 35; *see also id.,* Count III, ¶ 58. It further alleges that plaintiff would not have purchased the bonds had they known of these misrepresentations and omissions by defendant conspirators and co-conspirators. *Id.,* ¶ 44; *see also id.,* Count III, ¶ 59. Accepting all the factual allegations in the complaint as true and viewing them in a light most favorable to plaintiffs, as required in assessing a motion to dismiss under Rule 12(b), the complaint sufficiently alleges that the defendants' fraud was in connection with plaintiffs' purchase of the bonds. Although the exact dates of the misrepresentations and omissions are not specifically stated in the complaint, it is clear from the above-quoted allegations that a fraudulent act occurred prior to each respective purchase by a plaintiff and that the act induced the purchase.

 Defendants also assert that the allegations relating to defendants' omission of material facts in connection with the sale

of the bonds fails to state a claim absent the existence of an affirmative duty of disclosure. They rely on *Chiarella v. United States,* 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980), which holds that a defendants' failure to disclose material, non-public information in connection with a securities sale, absent a relationship between buyer and seller which would give rise to a duty to disclose, does not constitute a fraud under Section 10(b). *See also Staffen v. Greenberg,* 672 F.2d 1196, 1202 (3d Cir.1982).

Defendants appear to misconceive the allegations. Defendants are not alleged to have maintained complete silence about material information in the course of a transaction when they had a duty to the plaintiff to disclose. Rather, they are alleged to have made certain affirmative "misrepresentation of material fact and omitted to state material facts necessary to make the statements, in light of the circumstances in which they were made, not misleading." Amended Complaint, ¶ 35. Thus, the fraud alleged involves misrepresentation, through half-truths, rather than complete silence in the face of a duty to disclose. Plaintiffs' claim need not allege defendants have such a duty. A. Jacobs, Litigation and Practice Under Rule B–5, § 61.01[b] (2d ed. 1985); *compare Dower v. Mosser Industries, Inc.,* 488 F.Supp. 1328, 1338 (E.D.Pa.1980) with *Cole v. Ford Motor Co.,* 566 F.Supp. 558, 565 (W.D.Pa.1983).

Even if plaintiffs are stating a true claim of omission, however, plaintiffs allege in the amended complaint that defendants, as "broker/dealers and banks selling bonds to their clients" (the plaintiffs), "acted as fiduciaries to plaintiffs." Amended Complaint, ¶ 29. Cases have held that a stockbroker may have a quasi-fiduciary duty toward his customer, depending on the facts of the individual relationship, which may require him to disclose material information. *See, e.g., United States v. Dial,* 757 F.2d 163, 168 (7th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 116, 88 L.Ed.2d 95; *Marchese v. Shearson Hayden Stone, Inc.,* 734 F.2d 414, 418 (9th Cir.1984); *Carras v. Burns,* 516 F.2d 251, 257 (4th Cir.1975). If

defendants, for example, were in a position of advising their customers or were under an obligation of trust or confidence, a fiduciary duty may exist, *Carras,* 516 F.2d at 256–57; *Minpeco, S.A. v. Conticommodity Services, Inc.,* 552 F.Supp. 327, 331 (S.D.N.Y.1982). Moreover, a duty to disclose information may arise in certain circumstances absent a fiduciary relationship. For example, when the defendant "has superior knowledge of the suppressed fact and the defrauded party has been induced to take action he might not otherwise have taken, the obligation to disclose is particularly compelling." *Mann v. Adams Realty Co.,* 556 F.2d 288, 297 (5th Cir.1977); *see also City of Harrisburg v. Bradford Trust Co.,* 621 F.Supp. 463, 473 (E.D.Pa.1985); *Jewish Center of Sussex County v. Whale,* 165 N.J.Super. 84, 89, 397 A.2d 712 (Ch.Div. 1978), *aff'd,* 172 N.J.Super. 165, 411 A.2d 475 (App.Div.1980), *aff'd* 86 N.J. 619, 432 A.2d 521 (1981) (discussing equitable fraud doctrine). At this point, the Court cannot conclude beyond doubt that the plaintiffs can prove no set of facts in support of their claim and thus cannot determine yet that defendants had no duty to disclose information to plaintiffs. *See id.* at 331.

Defendants' motions to dismiss Counts I and III for failure to state a claim are denied.

■■■■ Defendants similarly attach some of the common law claims for inadequate pleading of the same elements. For example, scienter is also an element of common law fraud. *Jewish Center of Sussex County v. Whale,* 86 N.J. 619, 624–25, 432 A.2d 521 (1981). A claim of breach of fiduciary duty obviously requires the existence of a fiduciary duty between the parties. The Court finds these elements have adequately been pleaded, as previously discussed. Defendants incorrectly contend, however, that a fiduciary duty between parties is an element of a claim for negligent misrepresentation. Under New Jersey law, an "incorrect statement negligently made and justifiably relied upon, may be the basis for recovery of damages for eco-

nomic loss or injury sustained as a consequence of that reliance." *Rosenblum v. Adler*, 93 N.J. 324, 334–35, 461 A.2d 138 (1983).

Defendants additionally attack Counts I's allegations of a conspiracy between certain defendants and non-defendants to defraud plaintiffs as lacking the requisite particularity and specificity. They argue that no specific facts concerning the existence of an agreement between the conspirators is presented nor is there any delineation of the individual roles played by the conspirators.

As discussed previously, five defendants ("conspirator defendants") and 52 non-parties ("co-conspirators") who were members of the underwriting group that directly marketed and sold the securities to the investing public, are alleged to have conspired to fraudulently market and sell bonds by making misrepresentations and omissions of material fact. Amended Complaint ¶¶ 6–77, 31–45. The purpose of this scheme and conspiracy was "to induce purchases of the bonds at artificially inflated prices and to maintain those prices at these artificial levels to allow the conspirator defendants to garner commissions and profits from the continued marketing and purchases and sales of the bonds throughout the market." *Id.* ¶ 38. The conspiracy was evidenced by the following acts:

(a) the dissemination of the Official Statements for Project Nos. 4 and 5, which contained misrepresentations, omissions and false information and/or were deceptive in their presentation of information concerning the financial backing for and security of the bonds;

(b) the making of misrepresentations and omissions of material fact in their direct sales of the bonds to plaintiffs and others, based on and to further the misrepresentations and omissions contained in the Official Statements;

(c) the conspirator defendants' and co-conspirators' affirmative suppression of true information concerning the security of the bonds, the involvement of BPA and other federal and state agencies, the

validity of the Participants' Agreements, and other true information concerning the safety of payment of the bonds; and

(d) the conspirator defendants' and co-conspirators' failure to inform plaintiffs and others of the false deceptive information and the omissions contained in the Official Statements for Project Nos. 4 and 5 and the false and deceptive information then being disseminated to plaintiffs and other purchasers of the bonds. *Id.,* ¶ 39.

It is also alleged that the conspirators received non-public information concerning the bonds and Plants 4 and 5, discussed and reviewed such information with each other, and conformed their actions to create the impression that the Plants were "economically justified and necessary, were properly designed and planned, were constructed in a prudent manner, and all indebtedness was financially secure." Amended Complaint, ¶ 62.

A conspiracy is an agreement between parties to accomplish an unlawful purpose. *Rocher Brothers, Inc. v. Rhodes*, 527 F.2d 880, 889 (3d Cir.1975). In actions alleging a conspiracy to defraud, the particularity requirements of Rule 9(b) must be met. *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir.1985); *Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir.1972); *Klein v. Council of Chemical Associations*, 587 F.Supp. 213, 227 (E.D.Pa.1984). The unlawful object of the conspiracy alleged here is the commission of the fraudulent acts alleged in the complaint—the sale of bonds to plaintiffs at inflated prices through misrepresentations and omissions. The Court has already concluded that these allegations of fraudulent acts meet the particularity requirements of Rule 9(b).

The additional element of a conspiracy— an agreement between the alleged conspirator—cannot be conclusionally pled. *Hayduk*, 775 F.2d at 444; *Troyer v. Karcagi*, 476 F.Supp. 1142, 1153 (S.D.N.Y.1979). Specific facts of an agreement must be alleged. The amended complaint alleges that the conspirators were all members of the underwriting group that marketed and

sold the bonds at issue. All these parties thus had a clear motive to conspire to artificially inflate the prices of the bonds on the market. Moreover, it is alleged that all the conspirators participated in the drafting of the "official Statements" of the bonds which allegedly contained falsehoods and misrepresentations. Also, each conspirator's alleged fraudulent acts were purportedly in conformity with those of the others. While these allegations perhaps do not constitute direct evidence of an agreement between the parties, direct evidence of a conspiracy rarely exists. Instead, a conspiracy often is established by inferences from circumstantial evidence. *Venture Technology, Inc. v. Natural Fuel Gas Co.,* 685 F.2d 41, 45 (2d Cir.), *cert. denied,* 459 U.S. 1007, 103 S.Ct. 362, 74 L.Ed.2d 398 (1982); *United States v. Trotter,* 529 F.2d 806, 810 (3d Cir.1976). The complaint presents sufficient specific allegations which, when viewed in a light most favorable to plaintiffs, support a claim of conspiracy. Further, the allegations sufficiently delineate the roles or participation of each defendant in the conspiracy. *Hayduk,* 775 F.2d at 444–45; *Bruss Co. v. Allnet Communication Services, Inc.,* 606 F.Supp. 401, 405 (N.D.Ill.1985); *Eisenberg v. Gagnon,* 564 F.Supp. 1347, 1352 (E.D.Pa. 1983). The exhibits to the complaint provide specific facts about each conspirator defendants' acts in furtherance of the conspiracy: its sale of which bonds to which plaintiffs through the use of which misrepresentations. Thus, each conspirator defendant has adequate notice of the alleged conspiracy to defraud and its alleged part in it.

Count I alternatively pleads that the conspirator defendants aided and abetted other non-defendants who were members of the underwriting group ("no beginning") in their fraudulent misrepresentations in connection with the sale of bonds. Amended Complaint, ¶ 41. Movants assert that these allegations also are insufficient under Rule 9(b).

Three elements are necessary to state a claim of aiding and abetting a violation of Section 10(b): (1) that an independent wrong exists; (2) that the aider and abettor knows of that wrong's existence; and (3) that substantial assistance be given in effecting that wrong. *Walck v. American Stock Exchange, Inc.,* 687 F.2d 778, 790–91 (3d Cir.1982); *cert. denied,* 461 U.S. 942, 103 S.Ct. 2118, 77 L.Ed.2d 1300; *IIT, An Intern. Inv. Trust v. Cornfeld,* 619 F.2d 909, 922 (2d Cir.1980).

Considering the first element, the allegations in the complaint refer to the allegations of "misrepresentations or omissions of material facts with regard to the continuing sales of the bonds" made by other members of the underwriting group. Amended Complaint, ¶ 41. The Court has already held that the allegations including the exhibits about such acts committed by *defendants* were sufficient to state claims for fraud and violations of Section 10(b). While the amended complaint alleges the same basic acts by the non-defendant "co-conspirators", it does not specify, in Exhibit 4, the particular misrepresentations made by each "co-conspirator." Thus, the acts committed by these co-conspirators, which the conspirator defendants allegedly aided and abetted, are not alleged with the same particularity as the acts committed by the defendants. The amended complaint will have to be amended to include allegations about the particular misrepresentations made by the "co-conspirators" in order that an independent section 10(b) and Rule 10b–5 claim against the co-conspirators be sufficiently alleged. Plaintiffs shall have 20 days to make such amendments.

As to the second element of aiding and abetting, it is alleged that the conspirator defendants "knew or recklessly disregarded" that the co-conspirators were making such misrepresentations. Amended Complaint, ¶ 41. While some courts have stated that each element of aiding and abetting must be stated with the particularity required by Rule 9, *Decker v. Massey-Ferguson, Ltd.,* 681 F.2d 111, 119–20 (2d Cir. 1982); *Zatkin v. Primuth,* 551 F.Supp. 39, 42 (S.D.Cal.1982), the better view is that a general allegation of knowledge is accept-

able, as expressly provided for in Rule 9(b). *ITT*, 619 F.2d at 923–24; *Riley v. Brazeau*, 612 F.Supp. 674, 678 (D.Ore.1985); *see discussion supra.*

The following allegation concerns the third element: conspirator defendants "knowingly or recklessly rendered substantial assistance to the making and furtherance of those misrepresentations and omissions or failed to inform the plaintiffs and the market of the falsity of those representations and omissions." Amended Complaint, ¶ 41. The phrase "substantial assistance" apparently refers to the conspirator defendants' misrepresentations and omissions in connection with their own marketing and sales of bonds to plaintiffs, including their participation in the preparation of the "Official Statements" about the bonds. The complaint alleges such acts with sufficient particularity. Such alleged acts would substantially assist the co-conspirators in their scheme to fraudulently sell the bonds at artificially inflated prices. With respect to the alternative allegation that conspirator defendants "failed to inform the plaintiffs and the market" of the misrepresentations, this Circuit has held that "the 'substantial assistance' element of aider and abettor liability may be satisfied by 'inaction . . . where the plaintiff demonstrates that the aider-abettor consciously intended to assist in the perpetration of a wrongful act,'" *Walck*, 687 F.2d at 791 (*quoting Monsen v. Consolidated Dressed Beef Co.*, 579 F.2d 793, 800 (3d Cir.), *cert. denied*, 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978)). Moreover, such inaction may be actionable as aiding and abetting if there is a duty to disclose the violation. *Monsen*, 579 F.2d at 800. As previously discussed, plaintiffs have alleged that defendants acted as fiduciaries as to them. Amended Complaint, ¶ 29.

Thus, a claim of aiding and abetting a Section 10(b) violation by the conspirator defendants is sufficiently pleaded if plaintiffs make the amendments to the complaint discussed.

Defendants also argue that Count II, the civil claim under the RICO Act (18 U.S.C.

§ 1964), is defective on several grounds. They contend that the predicate crimes alleged, "fraud, wire fraud and mail fraud in the sale of securities," are not alleged with particularity in accordance with Rule 9(b). However, the allegations of the fraudulent scheme and acts in Count I are incorporated into the RICO Count and the Court has already found them to be sufficiently particular.

They further assert that neither the elements of the predicate offenses nor a "pattern" of racketeering activity are adequately alleged as required in the RICO Act. The amended complaint's allegation concerning the pattern of racketeering activity states as follows: "The wrongful acts of the conspirator defendants and co-conspirators, as alleged above, consisting of the commission of two or more acts of fraud, wire fraud and mail fraud in the sale of securities within a ten-year period, constitute an unlawful pattern of racketeering activity within the meaning of RICO, 18 U.S.C. §§ 1961(1) and (5)." Amended Complaint, ¶ 50. Section 1961(1) defines "racketeering activity" to include "any act which is indictable under . . . Title 18, United States Code . . . section 1341 (relating to mail fraud), section 1343 (relating to wire fraud)" and "any offense involving . . . fraud in the sale of securities, . . . punishable under any law of the United States." It is unclear from these allegations precisely which predicate offense is being alleged. The elements required to establish an offense for wire fraud or mail fraud are (1) a scheme to defraud; (2) using interstate communications, including telephone (for wire fraud) or mail (for mail fraud), in furtherance of the scheme to defraud, and (3) culpable participation by defendant. 18 U.S.C. §§ 1341, 1343. *Pereira v. U.S.*, 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954); *U.S. v. Brien*, 617 F.2d 299, 307 (1st Cir.) *cert. denied*, 446 U.S. 919, 100 S.Ct. 1854, 64 L.Ed.2d 273 (1980). The requisite *mens rea* for both frauds is a specific intent to defraud. *United States v. Klein*, 515 F.2d 751, 754 (3d Cir.1975). The allegations in Count I which are, incorporated

into Count II, sufficiently allege a conspiracy or scheme to commit fraud and the commission of fraud, in the sale of securities, as previously discussed. Thus, a scheme to defraud has certainly been pleaded. Regarding the second element of mail and wire fraud, the complaint initially alleges: "In connection with the acts, conduct, combination and conspiracy alleged in this amended complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including telephone communications and the mails." Amended Complaint ¶ 3. While no specifics are alleged about individual telephone or mail communications, the complaint sufficiently apprises defendants of the predicate offenses which form the basis of the civil RICO claim and satisfies the liberal pleading requirements of civil actions. In *Seville,* the Third Circuit upheld the particularity in pleading of a civil RICO claim alleging mail and wire fraud as predicate acts though the complaint did not allege the date, place, or time of phone calls or use of the mails. *Seville,* 742 F.2d at 791. Finally, the requisite intent for mail or wire fraud includes a knowing and willful or reckless state of mind, which is the same as the scienter requirement alleged for the securities fraud violation as pleaded in Count I. *See, e.g. United States v. Boyer,* 694 F.2d 58, 59–60 (3d Cir.1982); *United States v. Perkal,* 530 F.2d 604, 605 (4th Cir.), *cert. denied,* 429 U.S. 821, 97 S.Ct. 70, 50 L.Ed.2d 82 (1976). Thus, the RICO count states as a predicate act offenses under the mail and wire fraud statutes.

The RICO Count may also be alleging as a predicate offense "fraud in the sale of securities, . . . punishable under any law of the United States," since a violation of Section 10(b) may constitute a criminal offense if it is "willful." 15 U.S.C. § 78ff(a); *Trane Co. v. O'Conner Securities,* 718 F.2d 26, 29 n. 4 (2d Cir.1983). An act is willful if the defendant intended to commit the act prohibited; a specific intent to violate the statute or rule need not be shown. *United States v. Dixon,* 536 F.2d 1388, 1397 (2d Cir.1976); *United States v.*

*Jones,* 380 F.Supp. 343, 344 (D.N.J.1974). The allegations of conspirator defendants' Section 10(b) violation include allegations that "they knowingly ... engaged in actions, transactions and practices which operated as a fraud and deceit upon plaintiffs," namely, a scheme or conspiracy to sell bonds by making material misrepresentations and omissions of fact about the bonds. Amended Complaint, ¶ 32. Since, as discussed above, plaintiffs have otherwise sufficiently stated a cause of action for Section 10(b) and Rule 10b–5 violations in Count 1, which is incorporated in Count II, Count II sufficiently alleges the predicate offenses for a RICO claim. *See In re Catanella and E.F. Hutton and Co.,* 583 F.Supp. 1388, 1425 (E.D.Pa.1984).

Defendants contention that Count II fails to adequately plead a "pattern" of racketeering activity is also flawed. 18 U.S.C. § 1961(5) defines "pattern of racketeering activity" as requiring "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years ... after the commission of a prior act of racketeering activity." In this regard, Count II pleads that conspirator defendants and co-defendants committed "two or more acts of fraud, wire fraud and mail fraud in the sale of securities within a ten-year period." Amended Complaint, ¶ 50.

As defendants point out, the Supreme Court, in a footnote in *Sedima,* remarked that "while two acts are necessary, they may not be sufficient." *Sedima, S.P.R.L. v. Imrex Co., Inc.,* — U.S. —, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985). It quoted the following definition of "pattern" as "useful" in interpreting that term in § 1961: "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* Certainly, lower courts, in fleshing out this dicta in *Sedima,* have

interpreted a "pattern" of acts to include a component of "similarity" as well as "multiplicity." *Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc.,* 615 F.Supp. 828, 831 (N.D.Ill.1985); *see also Kredietbank, N.V. v. Morris et al.,* C 84–1903 (D.N.J. January 9, 1986) [Available on WESTLAW, DCTU database]; *Allington v. Carpenter,* 619 F.Supp. 474, 477–78 (C.D.Cal.1985). The predicate acts must be related in the sense that there is "a common perpetrator, common methods of commission or common victims" and multiple in the sense that they occurred in separate criminal "episodes" or transactions. *Id.* at 478; *Inryco,* 615 F.Supp. at 831. Thus, most courts have found that multiple acts committed in furtherance of the same criminal activity or scheme do not constitute a "pattern" of racketeering activity. *See Kredietbank,* slip op. at 8; *Allington,* 619 F.Supp. at 478; *Inryco,* 615 F.Supp. at 831.

In the present case, the alleged acts are clearly related in that while the fraud was perpetrated on different plaintiffs, it was committed in an almost identical manner; (the same fraudulent misrepresentations and omissions regarding the bonds), the purposes and results were similar (the marketing of the bonds was at inflated prices which resulted in injury to the investors), and the victims were of similar status or circumstances (investors in the bond market). An argument can be advanced that the acts did not occur in multiple criminal episodes but as part of a single fraudulent scheme or episode. However, these acts took place over a period of almost six years, took place all over the country and injured approximately 1400 individual investors. Such facts bespeak a "pattern" of activities rather than merely a single criminal episode. *See Rush v. Oppenheimer & Co., Inc.,* 628 F.Supp. 1188 (S.D.N.Y.1985) (multiple fraudulent acts occurring over 18 months in churning scheme against plaintiff satisfied "pattern" requirement); *Papagiannis v. Pontikis,* 108 F.R.D. 177, 179 (N.D.Ill.1985) ("a malefactor's perpetration of fraudulent activities on more than one victim, while following the same *modus operandi,* is indeed a 'pattern' for RICO purposes"); *Inryco,* 615 F.Supp. at 831–33.

The RICO claim sufficiently alleges a "pattern" of racketeering activity, in light of *Sedima* and other recent cases.

Defendants also contend that the allegations have not stated two or more predicate offenses. As to the alleged offenses of mail and wire fraud, each individual use of the mail or wires constitute a separate offense, even if part of one fraudulent scheme. *Badders v. United States,* 240 U.S. 391, 394, 36 S.Ct. 367, 368, 60 L.Ed. 706 (1916); *United States v. Benmuhar,* 658 F.2d 14 (1st Cir.1981), *cert. denied,* 458 U.S. 1132, 103 S.Ct. 16, 73 L.Ed.2d 1402 (1982). The complaint clearly alleges more than one telephone or mail communication and thus sufficiently alleges two or more predicate offenses of mail and/or wire fraud, which meet the requirements of § 1961(5). Complaint, ¶ 50; *United States v. Salvitti,* 451 F.Supp. 195, 200 (E.D.Pa.1976), *aff'd,* 588 F.2d 822 (3d Cir. 1977).

If Count II is also alleging as predicate offenses violations of Section 10(b) and Rule 10b–5 ("fraud in the sale of securities"), a more difficult issue is posed. The allegations arguably relate to only one large fraudulent scheme in violation of Section 10(b) and Rule 10b–5. This raises the issue of whether the alleged multiple representations and omissions made pursuant to that fraudulent scheme constitute multiple violations of Section 10(b) or only one offense. *See, e.g., United States v. Mackay,* 491 F.2d 616, 619 (10th Cir.1973), *cert. denied,* 416 U.S. 972, 94 S.Ct. 1996, 40 L.Ed.2d 560 (1974) (each mailing constitutes a separate fraud offense under Section 10(b)). The Court need not decide this issue, however, since Count I (incorporated into Count II) can be read to allege both a criminal violation of Section 10(b) *and* a conspiracy by "conspirator defendants" to violate that section. Since a criminal conspiracy to engage in one of the substantive offenses listed as a "racketeering activity" in § 1961(1) qualifies as a separate predicate offense, Count II does allege two predicate offenses involving fraud in the sale of

securities. *United States v. Phillips,* 664 F.2d 971, 1015 (5th Cir.1981); *cert. denied,* 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166; *United States v. Weisman,* 624 F.2d 1118, 1123–24 (2d Cir.), *cert. denied,* 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 91 (1980).

Defendants' motions to dismiss Count II for lack of particularity and failure to state a claim are denied.

All defendants next contend that the claims under Section 10(b) and the RICO Act must be dismissed because they were untimely filed under the applicable statute of limitations. Since the parties refer to evidence outside the pleadings on this issue, the motion will be treated as one for summary judgment.

Defendants' positions are essentially the same: The applicable statute of limitations is found in the New Jersey Securities Law, N.J.S.A. 49:3–47 *et seq.* (1970), which provides for a two year period. This period should run from the time of the securities sale or from the time when plaintiffs should reasonably have learned of the alleged securities fraud. In the matter herein, plaintiffs should have learned about the fraud in the year of 1982 or 1983, when several newspaper and magazine articles concerning the alleged fraud appeared in major publications. Finally, the allegations in the complaint regarding defendants' fraudulent concealment of plaintiffs' claims which would toll the statute are insufficient under Rule 9(b).

Plaintiffs respond that the applicable statute of limitations for the Section 10(b) and RICO claims is New Jersey's six-year statute of limitations for common law fraud. Also, plaintiffs could have reasonably discovered the alleged fraud only when the Washington Supreme Court declared in June 1983 that the guarantees on the bonds were invalid. Defendants allegedly fraudulently concealed plaintiffs' claims up to and after that date, and the statute of limitations was tolled until plaintiffs actually learned of the fraud.

■ There exists no federal statute of limitations for claims under Section 10(b) of the 1934 SEA or the RICO Act. Where no stated federal statute of limitations for a federal cause of action exists, federal courts generally adopt the period provided in the "most analogous" statute of limitations in the forum state law, unless inconsistent with federal interest. *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 1942–43, 85 L.Ed.2d 254 (1985) (quoting *Board of Regents v. Tomanio,* 446 U.S. 478, 488, 100 S.Ct. 1790, 1797, 62 L.Ed.2d 440 (1980)); *see also Ernst and Ernst v. Hochfelder,* 425 U.S. 185, 210 n. 29, 96 S.Ct. 1375, 1389 n. 29, 47 L.Ed.2d 668 (1976) *reh. denied,* 425 U.S. 986, 96 S.Ct. 2194, 48 L.Ed.2d 811; *Kirschner v. Cable/Tel Corp.,* 576 F.Supp. 234, 241 (E.D.Pa.1983).

■ Looking first to New Jersey's conflict of law rules, the applicable substantive law is that of the state with the most substantial contacts with the matter and with the most substantial government interest in the matter. *Henry v. Richardson-Merrell, Inc.,* 508 F.2d 28, 32 (3d Cir. 1975); *Rose v. Port of New York Authority,* 61 N.J. 129, 140, 293 A.2d 371 (1972). Apparently, the plaintiffs herein reside in New Jersey, the defendants do business in New Jersey, and many of the securities transactions at issue took place within New Jersey. Amended Complaint, ¶ 3. Thus, this matter has significant contacts with New Jersey. New Jersey has an interest in regulating conduct within its borders. *White v. Smith,* 398 F.Supp. 130, 134 (D.N. J.1975). Moreover, New Jersey has a *clear* interest in regulating the type of activity alleged here, namely, securities fraud, as evidenced by its enactment of the Uniform Securities Law, N.J.S.A. 49:3–47 *et seq.* Neither party has suggested the application of any other state's substantive law. The Court will apply the law of New Jersey.

■ The most analogous statute of limitations under New Jersey law for the Section 10(b) claim is clearly the statute of limitations applicable to a securities fraud claim under the New Jersey Securities Law. N.J.S.A. 49:3–52, which follows the language of Rule 10b–5 and makes it un-

lawful "for any person, in connection with the offer, sale, or purchase of any security, ... to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading...." N.J.S.A. 49:3–71 provides for a civil action against a defendant who commits such prohibited acts by the person purchasing the security and states, "No person may sue under this section more than two years after the contract of sale."

Plaintiffs cite *Roberts v. Magnetic Metals Co.*, 611 F.2d 450 (3d Cir.1979) and *Biggans v. Bache Halsey Stuart Shields, Inc.*, 638 F.2d 605 (3d Cir.1980) as requiring the application of a statute of six years for a claim of common law fraud in New Jersey. *Roberts* addressed the issue posed here, that is, which state statute of limitations applies to a claim under Section 10(b) and Rule 10b–5 for deceptive and manipulative devices brought in a New Jersey district court. In *Roberts* two judges essentially held that the two-year statute of limitations in the New Jersey Securities Law should not be applied because the claim in that case was brought by a *seller* of securities and the New Jersey act provides only for an action by the *buyer* of securities. Rather, they found governing the six-year period for a claim of common law fraud in New Jersey wherein the seller could bring suit against the buyer in state court. *See Roberts*, 611 F.2d at 453, 455, 459–60. The majority in *Biggans* (involving Pennsylvania's statute of limitations), summarized the Court's holding in *Roberts* and concluded, "Where the state blue sky law does not provide the plaintiff with a cause of action for the relief requested, but common law does, and where the state legislature framed its statute to supplement, rather than supplant, available common law remedies, it is the common law limitations period which must be applied in federal securities actions." *Biggans*, 638 F.2d at 610. After *Roberts* and *Biggans*, a court in this district has ruled that, for a claim of fraudulent misrepresentations and omissions under Section 10(b) and Rule

10b–5 by a *buyer* of securities, the applicable state statute of limitations is that provided in the New Jersey Securities Law. Judge Gerry reasoned that "plaintiffs' claims are of a type which would be actionable under the state blue sky law." *Corson v. First Jersey Securities, Inc.*, 537 F.Supp. 1263, 1266 (D.N.J.1982). Likewise, in the present case, plaintiffs' claim under Section 10(b) for fraud in connection with their purchase of securities would be actionable under the New Jersey Securities Law. Thus, the two-year limitations period on such an action in N.J.S.A. 49:3–71(e) would be applicable to the Section 10(b) claim.

While state law supplies the limitations period, it is a matter of federal law as to when the period commences to run. *Rawlings v. Ray*, 312 U.S. 96, 98, 61 S.Ct. 473, 85 L.Ed. 605 (1941); *Biggans*, 638 F.2d at 607 n. 3. The general federal equitable rule that a statute of limitation commences running when plaintiff knows or exercising reasonable diligence should know of the wrong, is also applicable to Section 10(b) claims. *See, e.g., Bowling v. Founders Title Co.*, 773 F.2d 1175, 1178 (11th Cir.1985); *Biggans*, 638 F.2d at 607 n. 3; *ITT*, 619 F.2d at 929. This federal rule has been applied even when the state statute of limitations provides for a fixed date of commencement of the period of limitations or is otherwise inconsistent with the federal rule. *State of Ohio v. Peterson, Lowry, Rall, Etc.*, 651 F.2d 687, 692 (10th Cir.1981); *Hudak v. Economic Research Analysts, Inc.*, 499 F.2d 996, 1000 n. 5 (5th Cir.1974), *cert. denied*, 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 821 (1975); *Kirschner*, 576 F.Supp. at 240 n. 7; *see also Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946). The court in *Kirschner*, for example, rejected the contention that, if the applicable statute of limitations for plaintiffs 10(b) claims was N.J.S.A. 49:3–71(e), the requirement of the section that the two year period commence *at the time of the securities transaction* must also be adopted. Rather, it applied the federal "discovery" rule so that

the two-year period would commence only when plaintiffs knew or could have known of the alleged fraud. *Kirschner,* 576 F.Supp. at 240 n. 7. *See also Bull v. American Bank and Trust Co. of Pa.,* slip op. (E.D.Pa. Jan. 13, 1986).

▮▮▮ Therefore, the two-year period of limitation provided in the New Jersey Securities law must commence when plaintiffs first knew or with reasonable diligence should have known about the alleged securities fraud. The parties disagree about when this time of discovery occurred. The amended complaint alleges that the plaintiffs could not, and did not, learn of the alleged wrongs until "at the earliest, June 16, 1983." Amended Complaint, ¶ 27. That date is when the Washington Supreme Court held the guarantees on the bonds invalid. The complaint here was originally filed on June 15, 1985, barely within the two-year period of limitations. Defendants, on the other hand, assert that plaintiffs knew or should have known of the alleged wrongs earlier because of a series of articles in periodicals and newspapers first appearing in early 1981, which referred to problems relating to the construction in May 1981, the lowering of the bond's Moody ratings in June, 1981, and the prospect of a default on the bonds in early 1983. *See* Defendants' Memoranda in Support of Motion to Dismiss. It is obvious from these submissions that a genuine issue of material fact has been joined as to when plaintiffs learned of or reasonably should have learned of the wrongs alleged in the complaint, including the Section 10(b) claim. This issue cannot be resolved as a matter of law by summary disposition but rather must be decided by the trier of fact. *See Admiralty Fund v. Hugh Johnson & Co.,* 677 F.2d 1301, 1309–10 (9th Cir.1982); *Herm v. Stafford,* 663 F.2d 669, 682 (6th Cir.1981). Defendants' motion for summary judgment on the statute of limitations issue is denied.

Plaintiffs further contend that their claims are not barred by the statute of limitations because defendants fraudulently concealed their claims and such conduct tolled the running of the statute of limitations. Under a section captioned "Fraudulent Concealment", the amended complaint alleges essentially that defendants had access to information about the truth of their statements and omissions which was not made available to investors; defendants fraudulently concealed plaintiffs' claims by making misrepresentations and omissions about the utilities' abilities to guarantee payment on the bonds, about the financial status of Plants No. 4 and 5, about construction delays and cost overruns and failing to correct false information disseminated by others; defendants had a fiduciary duty to plaintiffs to insure they provided accurate information. Plaintiffs did not, and could not have reasonably discovered their claims until, at the earliest, June 16, 1983, due to these acts of fraudulent concealment. They had no access otherwise to the necessary information. Amended Complaint, ¶¶ 26–30.

▮▮▮ These allegations appear to restate the fraudulent scheme which is the basis for the claims. They do not allege any specific acts of active concealment of the cause of action apart from the scheme itself. *See Hauptmann v. Wilentz,* 570 F.Supp. 351, 397 (D.N.J.1983), *aff'd* 770 F.2d 1070 (3d Cir.1985). However, whether plaintiffs' allegations are described as active fraudulent concealment or part of the claim of fraud makes no difference as to the tolling of the statute of limitations. When borrowing a state statute of limitations for a federal claim such as under Section 10(b) the court should also apply the state's tolling rules. *Chardon v. Fumero Soto,* 462 U.S. 650, 657, 103 S.Ct. 2611, 2616, 77 L.Ed.2d 74 (1983). Under New Jersey law, active fraudulent concealment of a cause of action tolls the running of the statute of limitations until plaintiff discovers the wrong or has reasonable notice of it. *Hauptmann,* 570 F.Supp. 397; *Kohler v. Barnes,* 123 N.J.Super. 69, 79, 301 A.2d 474 (Law Div.1973). This coincides with the commencement of the running of the statute under the federal equitable tolling doctrine.

As noted previously, the RICO Act also does not contain its own statute of limitations. Thus, the most analogous state statute of limitations should be adopted except if inconsistent with federal interests. *Wilson v. Garcia*, 105 S.Ct. at 1942–43. New Jersey has its own racketeering act, N.J. S.A. 2C:41–1 *et seq.* (1982), but the act also lacks a limitations period.

The recent case law, in approaching this issue has taken two basic approaches. Some courts have attempted to find the statute of limitations most analagous for the particular type of predicate offense alleged ("particularist approach"). *Fustok v. Conticommodity Services, Inc.*, 618 F.Supp. 1076, 1077 (S.D.N.Y.1985); *Buffone*, "Statutes of Limitations in Civil RICO Actions, in Civil RICO Developments: 1984" (1985). Others have taken a more uniform approach, selecting one state statute of limitations for all civil RICO actions which is most analogous to the nature of the RICO cause of action and remedy. *Id.*

As an example of the particularist approach, courts have found the most analogous statute of limitations for a RICO claim alleging as predicate offenses mail or wire fraud to be that for a common law cause of action for fraud. *See Fustok*, 618 F.Supp. at 1081; *Umstead v. Durham Hosiery Mills, Inc.*, 578 F.Supp. 342, 347. (M.D.N.C.1984); *Kirschner*, 576 F.Supp. at 241. Under this approach, the applicable statute of limitations for the RICO claim here, which alleges mail and wire fraud as the predicate acts, is the six-year statute governing common law fraud. N.J.S.A. 2A:14–1. Also, the claim appears to plead securities fraud as a predicate offense, thus, the analogous statute of limitations is N.J.S.A. 49:3–71, providing for a two-year period.

The particularist approach leads to obvious problems in application. If different types of predicate offenses are pleaded, then they may have different analogous state statute of limitations, which would result in a bifurcated analysis of each offense (e.g., it would have to be determined with respect to each offense when plaintiffs learned of the alleged wrong or when they should have known about it). Also, because the RICO Act provides for a wide variety of predicate offenses for "racketeering activity" and the circumstances of each RICO claim will be unique, the courts will constantly have to re-analyze the analogous state statute of limitations. This will result in greater uncertainty and complexity in RICO litigation.

Moreover, recently in *Wilson v. Garcia, supra,* the Supreme Court, addressed a similar problem concerning a civil rights statute (42 U.S.C. § 1983) which lacked its own statute of limitations. The Supreme Court strongly favored a uniform approach to the federal court's borrowing of state statutes of limitations. Since Section 1983 claims, (like RICO claims) encompass a wide variety of alleged wrongs, much confusion had arisen over how to determine the most analogous state statute to borrow. The court posed the issue, "whether all § 1983 claims should be characterized in the same way, or whether they should be evaluated differently depending upon the varying factual circumstances and legal theories presented in each individual case." *Id.* 105 S.Ct. at 1943.

The *Wilson* Court emphasized that state statutes of limitations should be borrowed only so far as it is consistent with federal law and the "federal interest." In reasoning equally applicable to RICO claims, the court concluded that a "simple, broad characterization of all § 1983 claims best fits the statute's remedial purpose."

The experience of the courts that have predicated their choice of the correct statute of limitations on an analysis of the particular facts of each claim demonstrates that their approach inevitably breeds uncertainty and time-consuming litigation that is foreign to the central purposes of § 1983. Almost every § 1983 claim can be favorably analogized to more than one of the ancient common-law forms of action, each of which may be governed by a different statute of limitations. In the case before us, for

example, the respondent alleges that he was injured by a New Mexico state police officer who used excessive force to carry out an unlawful arrest. This § 1983 claim is arguably analogous to distinct state tort claims for false arrest, assault and battery, or personal injuries. Moreover, the claim could also be characterized as once arising under a statute, or as governed by the special New Mexico statute authorizing recovery against the State for torts of its agents.

A catalog of other constitutional claims that have been alleged under § 1983 would encompass numerous and diverse topics and subtopics: discrimination in public employment on the basis of race or the exercise of First Amendment rights, discharge or demotion without procedural due process, mistreatment of schoolchildren, deliberate indifference to the medical needs of prison inmates, the seizure of chattels without advance notice or sufficient opportunity to be heard—to identify only a few. If the choice of the statute of limitations were to depend upon the particular facts or the precise legal theory of each claim, counsel could almost always argue, with considerable force, that two or more periods of limitations should apply to each § 1983 claim. Moreover, under such an approach different statutes of limitations would be applied to the various § 1983 claims arising in the same State, and multiple periods of limitations would often apply to the same case. There is no reason to believe that Congress would have sanctioned this interpretation of its statute.

When § 1983 was enacted, it is unlikely that Congress actually foresaw the wide diversity of claims that the new remedy would ultimately embrace. The simplicity of the admonition in § 1983 is consistent with the assumption that Congress intended the identification of the appropriate statute of limitations to be an uncomplicated task for judges, lawyers and litigants, rather than a source of uncertainty, and unproductive and ever increasing litigation. Moreover, the legislative purpose to create an effective remedy for the enforcement of federal civil rights is obstructed by uncertainty in the applicable statute of limitations, for scarce resources must be dissipated by useless litigation on collateral matters.

Although the need for national uniformity "has not been held to warrant the displacement of state statutes of limitations for civil rights actions," *Boards of Regents v. Tomanio*, 446 U.S., at 489, 100 S.Ct., at 1797, uniformity within each State is entirely consistent with the borrowing principle contained in § 1983. We conclude that the statute is fairly construed as a directive to select, in each State, the one most appropriate statute of limitations for all § 1983 claims. The federal interests in uniformity, certainty, and the minimization of unnecessary litigation all support the conclusion that Congress favored this simple approach.

*Id.* at 1945–47. The Court determined the one type of claim most analogous to § 1983 action to be state personal injury actions sounding in tort. It rejected a "catchall" period of limitations for statutory claims because of the relative scarcity of statutory claims when § 1983 was enacted and because most rights enforceable under § 1983 are constitutional, not statutory in nature. *Id.* at 1948.

RICO expressly provides that it is to "be liberally construed to effectuate its remedial purposes." Pbl.L. 91–452, § 904(a), 84 Stat. 947. The statute's " 'remedial purposes' are nowhere more evident than in the provision of a private action for those injured by racketeering activity." *Sedima*, 105 S.Ct. at 3286. As with § 1983, determination of which claim and statute of limitations is most analogous to the specific facts and legal theories of each RICO claim results in great uncertainty and costly litigation, impracticalities against which the Supreme Court acted in *Wilson*. Thus, applying the analysis of the *Wilson* Court, the statute of limitations for civil RICO claims should, as a matter of

federal law, be borrowed from the single most analogous state statute of limitations.

Unlike § 1983, however, the RICO Act creates statutory private rights and remedies as a private enforcement mechanism of a penal statute. The state statute of limitations should not be one relating to a specific type of predicate offense since the offenses are extremely diverse. Rather, the focus should be on the nature of the rights and remedies provided in RICO. The most analogous New Jersey limitations statute in this sense is N.J.S.A. 2A:14–10(b); which provides, "All actions at law brought for any forfeiture upon any penal statute made or to be made, shall be commenced ... within 2 years next after the offense committed or to be committed against the statute, or cause of action accrued, when the benefit of the forefeiture and the action therefor is or shall be limited to or given to the party aggrieved." This limitation has been held applicable to the private cause of action provided in the Clayton Anti-trust Act, *Gordon v. Loew's Inc.*, 247 F.2d 451 (3d Cir.1957); *Skouras Theatre Corp. v. Radio-Keith-Orpheum Corp.*, 179 F.Supp. 163 (S.D.N.Y.1959); *Farbenfabriken Bayer, A.G. v. Sterling Drug Inc.*, 197 F.Supp. 627 (D.N.J.1961), *aff'd*, 307 F.2d 210 (3d Cir.1962).

While this Court will adopt the two-year period of limitations for the RICO claim, federal law again governs the determination of the accrual date of the RICO claim, as discussed above. Since the same factual issues are posed as to the accrual date, defendants' motion to dismiss must be denied as to the RICO claim also.

Nor, as a matter of law, are the state law claims (Counts IV, V, VI) barred by the applicable statute of limitations. The existence of a remedy under the New Jersey Securities Law does not pre-empt other common law actions. N.J.S.A. 49:3–71(h) expressly states, "The rights and remedies provided by this act are in addition to any other rights or remedies that may exist at law or in equity...." The statute of limitations governing actions for negligent misrepresentation, fraud or deceit, and breach

of fiduciary duty under New Jersey law is N.J.S.A. 2A:14–1, which provides in relevant part, "Every action at law ... for any tortious injury to the rights of another ... shall be commenced within 6 years next after the cause of any such action shall have accrued." An action accrues under this section when a party discovers or should discover the injury. *ICI Australia Ltd. v. Elliott Overseas Co.*, 551 F.Supp. 265, 269 (D.N.J.1982); *Lopez v. Swyer*, 62 N.J. 267, 275, 300 A.2d 563 (1973). Therefore, an issue of fact is again posed as to when plaintiffs learned or reasonably should have learned of their injuries.

Defendant Gibralter Securities seeks to dismiss the claims against them by plaintiffs Giangrande and Gittler, asserting that the two plaintiffs did not purchase any securities from Gibralter and thus lack standing to sue under Section 10(b). The plaintiffs, however, respond that they did purchase the bonds from Gibralter and submit copies of the confirmation slips for the purchases. *See* Exhibits D and E to Plaintiffs' Memorandum in Opposition to Motion to Dismiss of J.B. Hanauer & Co. and Gibralter Securities Co.

In order to have standing to bring suit under Section 10(b), a party must have purchased or sold the relevant securities. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). Since an issue of fact exists as to whether plaintiffs Giangrande and Gittler purchased the bonds, defendants' motion to dismiss or, in the alternative, its motion for summary judgment will be denied.

■ Defendants also seek dismissal of certain plaintiffs because they do not appear in Exhibit 4 to the amended complaint, the chart of representations made by individual defendants to individual plaintiffs. *See* Exhibit C to Plaintiffs' Motion for Leave to Amend. Exhibit 4, however, describes only active misrepresentations made by defendants. The claims in the amended complaint also allege that defendants unlawfully failed to disclose material facts in connection with the sale of bonds. Amended Complaint, ¶ 37. Such omissions

are actionable as fraud if the parties stand in some fiduciary relationship, which plaintiffs have sufficiently alleged in the complaint. Additionally, all the plaintiffs failing to appear in Exhibit 4 were sold stock by six defendants who are alleged to be "conspirator defendants" in the amended complaint. Exhibit C to Joint Memorandum; Exhibit 2 to Amended Complaint. Since these six defendants allegedly conspired with an aided and abetted other conspirator defendants, some of which did make active misrepresentations specified in Exhibit 4, the six defendants are allegedly responsible for those misrepresentations made by their co-conspirators. As discussed previously, the Court finds that the conspiracy and aiding and abetting allegations have been sufficiently pleaded in the amended complaint.

To briefly summarize the Court's ruling today:

1. Plaintiffs' motion for leave to amend its complaint as proposed is granted, but plaintiffs will have to compensate defendants Gibralter Securities Co. and J.B. Hanauer & Co. for their expenses incurred in preparing and filing their answers.

2. Defendants' motions to dismiss all counts of the amended complaint because of the failure to allege fraud with particularity as required by Rule 9(b) are denied.

3. Defendants' motions to dismiss Count I under rule 12(b)(6) for failure to state a claim are denied in all respects, provided that the allegations that "conspirator defendants" aided and abetted the "co-conspirators" in their violation of Section 10(b) and Rule 10b–5 must be amended as described earlier in this opinion.

4. Defendants' motion to dismiss Count II under RTule 12(b)(6) for failure to state a claim are denied in all respects.

5. Defendants' motion for summary judgment under Rule 56 on the grounds that the statute of limitations bars all the counts is denied in all respects.

6. Defendants' motions for summary judgment under Rule 56 on the claims of plaintiffs Giangrande and Gittler are denied.

7. Defendants' motions to dismiss the claims of certain plaintiffs (listed in Exhibit C to Joint Memorandum of Defendants in Opposition to Plaintiffs' Motion to Leave to Amend) are denied.