Ralph M. BRAUNSTEIN, Alan Russell Kahn, Thomas Kahn, Ruth E. P. Kahn and Viola DeLuca, Plaintiffs,

v.

LAVENTHOL & HORWATH, Defendant.

No. 77 Civ. 167 (LFM).

United States District Court,
S. D. New York.

June 29, 1977.

Willkie, Farr & Gallagher, by Louis A. Craco and Francis J. Menton, Jr., New York City, for defendant.

Baer & McGoldrick, by Thomas H. Baer, New York City, for plaintiffs.

MacMAHON, District Judge.

Defendant moves for summary judgment, pursuant to Rule 56, Fed.R.Civ.P., on grounds that the action is barred by the applicable statute of limitations.

Firestone Group Limited ("FGL"), a corporation engaged in real estate syndication, retained defendant, Laventhol & Horwath, in November 1969 to prepare and issue a report and audited financial statements to be used in connection with the private placement of $7.5 million of FGL securities. Plaintiffs, purchasers of a portion of those securities, allege that defendant issued the financial statements on December 6, 1969 and that FGL delivered them to plaintiffs on or about December 16, 1969. Plaintiffs contend that those financial statements were false and misleading because they overstated FGL's income, and that their reliance on the statements led to damages which they subsequently suffered. They charge defendant with violations of the federal securities laws, specifically, Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j), Rule 10b–5 (17 C.F.R. § 240.10b–5), Section 17(a) of the Securities Act of 1933 (15 U.S.C. § 77q), and various obligations imposed by the common law.

We will initially address defendant's motion for summary judgment on plaintiffs' first claim, which is for violation of the federal securities laws.

 Section 10(b) of the Securities Exchange Act of 1934 and Section 17(a) of the Securities Act of 1933 have no accompanying statute of limitations for civil violations and, therefore, the statute of limitations of the forum state is applicable. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 210 n.29, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); *Klein v. Shields & Co.,* 470 F.2d 1344, 1346–47 (2d Cir. 1972). The parties agree that N.Y. CPLR §§ 203(f) and 213(8) are the relevant statutes establishing the limitations period.

Those statutes, when read together, provide that, in actions based on fraud, suit must be commenced either within six years of the time the fraud is committed or within two years of the time the fraud is or, with reasonable diligence, could have been discovered by plaintiff, whichever period is longer. See *Schmidt v. McKay*, 555 F.2d 30, at 36–37, No. 76–7422 (2d Cir. 1977); *Klein v. Shields & Co., supra*, 470 F.2d at 1346–47; *Stull v. Bayard*, 424 F.Supp. 937, at 941 (S.D.N.Y.1977). Although state law determines the length of the limitations period, federal law determines when the period begins to run. *Arneil v. Ramsey*, CCH Fed.Sec.L.Rep. para. 95,865 at 91,180 (2d Cir. 1977); *Moviecolor Ltd. v. Eastman Kodak Co.*, 288 F.2d at 80, 83 (2d Cir.), *cert. denied*, 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26 (1961).

■ Plaintiffs concede that this action was not brought within six years of the time the acts constituting the fraud were committed, and they rely solely upon the two-year limitations period. Defendant contends, however, that there are a number of events which establish that plaintiffs knew or, with reasonable diligence, could have known of the facts constituting any alleged fraud prior to January 13, 1975, and that, therefore, the two-year statute of limitations bars their claim under the federal securities laws since they did not commence this action until January 13, 1977.

We agree with defendant. The events which transpired between December 1969, when defendant's allegedly fraudulent acts occurred, and January 13, 1975 undoubtedly should have alerted plaintiffs to the existence of the alleged fraud. FGL petitioned for reorganization under Chapter XI of the federal bankruptcy law in 1971. There was an 85% drop in the value of FGL stock from December 1969 to October 1971. In June 1971, Gerald L. Herzfeld brought suit against defendant in the Southern District of New York, the residence of the majority of plaintiffs, on claims substantially similar to those now asserted by plaintiffs against defendant. *Herzfeld v. Laventhol, Krekstein, Horwath & Horwath*, 71 Civ. 2209

(LFM). In or about February 1972, plaintiffs were canvassed by Allen Co. and/or Allen Inc., parties to that action, and were asked if they would like to assign whatever claims they might have that were similar to Herzfeld's for purposes of asserting such claims in the *Herzfeld* action. Public trial of that action took place before us on October 15–29, 1973. We rendered our decision in that action on May 29, 1974, see 378 F.Supp. 112, and it received coverage in the national press.

Our Court of Appeals has ruled that such facts are sufficient to charge plaintiffs with knowledge of alleged fraudulent acts. *Berry Petroleum Co. v. Adams & Peck*, 518 F.2d 402, 410 (2d Cir. 1975) (trading suspensions, precipitous decline in stock price, other lawsuits); *Klein v. Shields & Co., supra*, 470 F.2d at 1347 (other lawsuit). See *Stull v. Bayard, supra*, 424 F.Supp. at 941 (other lawsuit). Accord, *Hupp v. Gray*, 500 F.2d 993, 996–97 (7th Cir. 1974) (decline in stock price). As the Court of Appeals has stated:

> "[T]he time from which the statute of limitations begins to run is not the time at which a plaintiff becomes aware of all the various aspects of the alleged fraud, but rather the statute runs from the time at which plaintiff should have discovered the general fraudulent scheme. '[T]he statutory period . . . [does] not await appellant's leisurely discovery of the full details of the alleged scheme.' *Klein v. Bower*, 421 F.2d 338, 343 (2d Cir. 1970)." *Berry Petroleum Co. v. Adams & Peck, supra*, 518 F.2d at 410.

Since the *Herzfeld* plaintiffs discovered the fraud, "there is no doubt that the fraud was discoverable" prior to January 13, 1975. *Berry Petroleum Co. v. Adams & Peck, supra*, 518 F.2d at 410.

The recent decision of the Second Circuit in *Schmidt v. McKay, supra*, 555 F.2d 30, No. 76–7422 (2d Cir. 1977), does not compel a different result. In that case, the district court had granted summary judgment on grounds that the period of limitations had expired because the plaintiff could have discovered the alleged fraud over two years before he commenced the action. The

Court of Appeals reversed and held that under the facts of that case, there was a genuine issue of fact as to whether the fraud was discoverable by plaintiff within the applicable period. *Schmidt,* thus, did not hold that summary judgment may not be awarded on the ground that the statute of limitations has run.

Here, however, there is no genuine issue of fact as to whether plaintiffs knew of, or with reasonable diligence could have discovered, the fraud prior to January 13, 1975. There is no issue of fact concerning the events chronicled above, most importantly, our prior decision in *Herzfeld,* the press coverage of that case, and plaintiffs' actual knowledge of that case from Allen's request for assignment of their claim. There is only one reasonable inference to be drawn from those events, contrary to the situation in *Schmidt,* and that inference is that plaintiffs knew of, or with reasonable diligence could have discovered, defendant's alleged fraud prior to January 13, 1975.

Plaintiffs do not even attempt to argue that they could not have known of the underlying facts of defendant's fraud, a contention which would have been untenable in light of those events. Nevertheless, they argue that they cannot be charged with knowledge of the alleged fraud prior to January 13, 1975 because of the uncertain legal significance of the acts of defendant at that time. They assert that the underlying facts of defendant's fraud were not "sufficient in law" as of that date to charge them with knowledge because (1) they could not have known that scienter was a necessary element in a Section 10b–5 claim, or (2) that accountants could have been liable under that section until the Supreme Court's decision in *Ernst & Ernst v. Hochfelder, supra,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668. They further argue that they could not have known that they had a reasonable basis for a Section 10b–5 claim against defendant until the decision

of the Court of Appeals for the Second Circuit in *Herzfeld v. Laventhol, Krekstein, Horwath & Horwath,* 540 F.2d 27 (2d Cir. 1976). Plaintiffs contend, therefore, that either March 30, 1976, the date of decision in *Hochfelder,* or July 15, 1976, the date of the appellate decision in *Herzfeld,* is the appropriate date from which the two-year statute of limitations should run.

Plaintiffs' reliance upon *United States v. One 1961 Red Chevrolet Impala Sedan,* 457 F.2d 1353 (5th Cir. 1972), for this proposition is misplaced. There, plaintiff sued for the return of property which had been forfeited to the United States in 1963 because it had been used in conducting an illegal gambling business without payment of taxes and without the required registration. Although later case law had rendered such a forfeiture improper,[1] the government maintained that the plaintiff was barred from recovering his property because the applicable statute of limitations had run. The court ruled that the statute of limitations did not accrue until later case law had established that the privilege against self-incrimination was a complete defense to prosecution for violation of federal wagering tax and registration statutes.[2] Until that date, the plaintiff "had no reasonable probability of successfully prosecuting his claim against the government . . . . This is not . . . a case in which a plaintiff is ignorant of his rights, but rather a case of a plaintiff without a right." *United States v. One 1961 Red Chevrolet Impala Sedan, supra,* 457 F.2d at 1358. *Braunstein et al. v. Laventhol & Horwath,* 77 Civ. 167 (LFM).

Here, plaintiffs are clearly not within the principle enunciated in *Chevrolet.* First, this is not the case of a "plaintiff without a right." A civil cause of action for violation of Section 10b–5 has been recognized since *Kardon v. National Gypsum Co.,* 69 F.Supp. 512, 513–14 (E.D.Pa.1946), and the potential liability of accountants

---

1. See *United States v. United States Coin & Currency,* 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971).

2. See *Grosso v. United States,* 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968); *Marchetti v. United States,* 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968).

under that section was recognized in *H. L. Green Co. v. Childree,* 185 F.Supp. 95, 96 (S.D.N.Y.1960). In addition, plaintiffs certainly had a "reasonable probability of successfully prosecuting" their claims against defendant after our decision in *Herzfeld* in May 1974. That decision was res judicata and entitled to collateral estoppel effect until reversed, vacated or remanded. See 1B J. Moore, Federal Practice para. 0.416[3], at 2253 (2d ed. 1974). Furthermore, plaintiffs' purported quandary as to whether to plead scienter seems factitious in light of the fact that in *Herzfeld* we found that defendant, Laventhol, Krekstein, Horwath & Horwath, acted with the requisite scienter. Finally, although there was some conflict *between* circuits as to the necessity of proof of scienter in a Section 10b–5 civil claim, it had been clear since *Lanza v. Drexel & Co.,* 479 F.2d 1277 (2d Cir. 1973), that such proof was required *in the Second Circuit.*

We, therefore, grant summary judgment for defendant on plaintiffs' claim under the federal securities law.

 The remaining claims are all grounded on state law. Although we have the power to adjudicate those claims under our pendent jurisdiction, we must determine, in light of the principles enunciated in *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), whether we should decline to exercise such jurisdiction.

A federal court should decline to exercise pendent jurisdiction unless judicial economy, convenience and fairness to litigants are promoted. *United Mine Workers v. Gibbs, supra,* 383 U.S. at 726, 86 S.Ct. 1130. Those interests would not be served by the exercise of jurisdiction over the state law claims in this case because all the federal claims have been eliminated. As the Supreme Court said in addressing this problem in *United Mine Workers v. Gibbs, supra,* 383 U.S. at 726–27, 86 S.Ct. at 1139:

> "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed read-

ing of applicable law. Certainly if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."

The Second Circuit has consistently followed this policy. See *Calderone Enterprises Corp. v. United Artists Theatre Circuit,* 454 F.2d 1292, 1297 (2d Cir. 1971), *cert. denied,* 406 U.S. 930, 92 S.Ct. 1776, 32 L.Ed.2d 132 (1972); *Abrams v. Carrier Corp.,* 434 F.2d 1234, 1254 (2d Cir. 1970), *cert. denied sub nom. United Steelworkers v. Abrams,* 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971); *Yanity v. Benware,* 376 F.2d 197, 201 (2d Cir.), *cert. denied,* 389 U.S. 874, 88 S.Ct. 167, 19 L.Ed.2d 158 (1967). Moreover, it recently ruled that, absent special circumstances, it would be an abuse of discretion to retain jurisdiction for trial of a pendent state claim when the federal claims had been eliminated from the case. See *Nolan v. Meyer,* 520 F.2d 1276, 1280 (2d Cir.), *cert. denied,* 423 U.S. 1034, 96 S.Ct. 567, 46 L.Ed.2d 408 (1975).

Accordingly, we grant summary judgment to defendant on plaintiffs' first claim, which is for violation of the federal securities laws, and dismiss the remaining state law claims without prejudice to prosecution of those claims in state court.

So ordered.