Arthur I. KRONFELD et al., Plaintiffs,

v.

ADVEST, INC. et al., Defendants.

Stanley I. KIRWIN et al., Plaintiffs,

v.

ADVEST, INC. et al., Defendants.

Nos. 85 Civ. 4673 (LFM), 86 Civ. 4644 (LFM).

United States District Court,
S.D. New York.

Dec. 23, 1987.

Cohen, Milstein & Hausfeld, Washington, D.C. by Herbert E. Milstein, Michael D. Hausfeld and Lisa M. Mezzetti, Murray, Hollander, Sullivan & Bass, New York City by Daniel J. Sullivan, for plaintiffs.

Harvis & Zeichner, New York City by Stuart A. Krause, for defendant McLaughlin, Piven, Vogel Inc.

Rogers & Wells, New York City by Richard A. Cirillo, Joseph A. Post and Donald P. Alexander, for defendants Merrill Lynch, Pierce, Fenner & Smith Inc., Dean Witter Reynolds, Inc., Bear, Stearns & Co. and Bacon Whipple & Co.

Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey, New York City by Harvey D. Myerson, Lloyd S. Clareman and Mark E. Segall, for defendants Shearson Lehman Bros. Inc., Foster & Marshall, Inc. and The Robinson–Humphrey Co., Inc.

Weil, Gotshal & Manges, New York City by Joseph S. Allerhand, Jenner & Block, Chicago, Ill. by Jerold S. Solovy, Keith F. Bode and Howard S. Suskin, for defendant Clayton Brown & Associates, Inc.

Pickard and Djinis, Washington, D.C. by Anthony W. Djinis, Zuckerbrod & Taubenfeld, Cedarhurst, N.Y., by Martin Zuckerbrod, for defendant David Lerner Associates, Inc.

## OPINION

MacMAHON, District Judge.

Defendants move:

(1) to compel certain plaintiffs to arbitrate their claims against the defendants, pursuant to the Federal Arbitration Act, 9 U.S.C. § 3 (1970);

(2) to dismiss the amended complaints, pursuant to Fed.R.Civ.P. 9(b), for failure to plead fraud with sufficient particularity;

(3) to dismiss the amended complaints, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim for relief;

(4) for summary judgment, pursuant to Fed.R.Civ.P. 56(b), on the ground that the claims are barred by the applicable statutes of limitations;

(5) for entry of final judgments on certain counts of the amended complaints, pursuant to Fed.R.Civ.P. 54(b); and

(6) for an award of attorneys' fees and costs, pursuant to Fed.R.Civ.P. 11.

## BACKGROUND

Plaintiffs, purchasers of Washington Public Power Supply System ("WPPSS") bonds, issued to fund development of WPPSS Nuclear Power Plants 4 and 5 ("Project 4 & 5"), instituted this action against the underwriters and sellers of the bonds. Counts I and II of the amended complaints are brought against certain underwriting defendants who were members of the group directly marketing the WPPSS Project 4 & 5 bonds to the investing public. These counts allege violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 24.10–5, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* Counts III, IV, V, and VI, brought against all defendants, allege, respectively, violations of Section 10(b) of the Exchange Act and Rule 10b–5, negligent misrepresentation, fraud and deceit, and breach of fiduciary duties and obligations.

In essence, plaintiffs allege that defendants misrepresented or failed to disclose three categories of material facts concerning the Project 4 & 5 bonds: first, the existence of management and planning problems; second, the absence of government or agency guarantees; and third, the

unenforceability of agreements with certain utilities and municipalities respecting the purchase of power and partial guarantee of the bonds ("Participants' Agreements").

The *Kronfeld* plaintiffs' original complaint was dismissed with leave to file an amended complaint. Their amended complaint and the identical complaint filed in *Kirwin* were dismissed as insufficient. On reargument, the dismissals were affirmed, again with leave to amend the Exchange Act and RICO claims (Counts I, II, and III). The pendent state law claims (Counts IV, V, and VI) were dismissed without prejudice to repleading them in state court. Plaintiffs now replead the same six counts with the single substantive addition of an exhibit to Count III detailing representations made to certain individual plaintiffs at or about the time the Project 4 & 5 bonds were purchased ("Exhibit 6").

## DISCUSSION

### *Arbitration*

Certain plaintiffs signed customer agreements with arbitration provisions, and defendants seek to compel arbitration of all their claims. We must determine at the outset (1) whether an arbitration agreement exists; (2) whether the claims are arbitrable; and (3) whether the right to arbitrate has been waived.[1]

Plaintiffs do not dispute the existence of the agreements; nor do they raise any issues of unfairness or unconscionability. The arbitration agreements are therefore presumed valid.[2]

■ The Supreme Court's recent decision in *Shearson/American Express, Inc. v. McMahon*, —— U.S. ——, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), conclusively establishes the arbitrability of RICO and Exchange Act claims. Plaintiffs argue that *McMahon* is distinguishable because of the complexity of their conspiracy claims and

---

**1.** *See Brener v. Becker Paribas Inc.,* 628 F.Supp. 442, 446 (S.D.N.Y.1985); *Bigge Crane & Rigging Co. v. Docutel Corp.,* 371 F.Supp. 240, 243 (E.D. N.Y.1973).

**2.** *See Brener v. Becker Paribas Inc., supra,* 628 F.Supp. at 446 & n. 3.

the inefficiency of requiring them to litigate identical claims in two fora. The complexity point echoes the mistrust of arbitration expressly repudiated in *McMahon*.[3] A similar efficiency contention was considered and rejected in *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). *Byrd* concluded that "the Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims ... even where the result would be the possibly inefficient maintenance of separate proceedings in different forums."[4] Thus, the prospect that different plaintiffs with like claims may have to litigate in two different fora is unpersuasive.

Finally, there is no dispute that defendants have not waived their right to compel arbitration. Defendants have asserted that plaintiffs' claims are arbitrable from the outset. No cognizable prejudice to plaintiffs will result.[5]

Defendants' motion to compel arbitration is therefore granted. The balance of this opinion will address only the claims of plaintiffs who have not signed arbitration agreements.

### Rule 9(b)

### Counts I and II

█ Counts I and II allege a conspiracy by the underwriter defendants to make the misrepresentations and omissions that induced plaintiffs to purchase the Project 4 & 5 bonds, in violation of the Exchange Act and RICO. The conclusory fact allegations that plaintiffs offer to support these counts have been dismissed twice as inadequate. A brief review of Second Circuit authority will demonstrate anew that plaintiffs fail to meet the pleading requirements of Fed.R. Civ.P. 9(b).

Rule 9(b) provides, in pertinent part: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." This circuit consistently has held that securities fraud claims must meet this heightened particularity requirement.[6] Indeed, Rule 9(b) should be strictly construed in securities cases in order to minimize strike suits, to protect defendants from harm to their reputations from groundless claims, and to provide defendants with knowledge of the precise conduct at issue.[7]

To survive a Rule 9(b) motion in a securities fraud action, plaintiffs must plead factual allegations that set forth

1) precisely what statements were made, and 2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same, 3) the content of such

---

**3.** *Shearson/American Express, Inc. v. McMahon,* —— U.S. ——, 107 S.Ct. 2332, 2340–41, 96 L.Ed. 2d 185 (1987).

**4.** *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 217, 105 S.Ct. 1238, 1240, 84 L.Ed.2d 158 (1985). *See also Seguros Banvenez, S.A. v. S/S Oliver Drescher,* 761 F.2d 855, 862 (2d Cir.1985) ("The court may not refuse to grant a stay under section 3 based on considerations of judicial economy.").

**5.** Plaintiffs present no claims that arbitration will prejudice them. Nor is it likely that any prejudice shown would outweigh the strong federal policy favoring arbitration. *See Rush v. Oppenheimer & Co.,* 779 F.2d 885, 889 (2d Cir. 1985) (compelling arbitration on defendant's motion despite that defendant had delayed eight months before moving, had moved to dismiss the complaint, filed an answer, and participated in discovery); *Brener v. Becker Paribas Inc., supra,* 628 F.Supp. at 452 (time and expense incurred by plaintiff not sufficient prejudice to waive arbitration).

**6.** *See Zerman v. Ball,* 735 F.2d 15, 22 (2d Cir. 1984); *Decker v. Massey Ferguson, Ltd.,* 681 F.2d 111, 113 (2d Cir.1982); *Ross v. A.H. Robins Co.,* 607 F.2d 545, 557 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980); *see also* Note, *Pleading Securities Fraud Claims with Particularity Under Rule 9(b),* 97 Harv.L. Rev. 1432, 1433 n. 7 (1984) ("For the last decade, the Second Circuit has consistently required far greater specificity in pleadings alleging fraud than have other circuits.").

Thus, despite plaintiffs' urging, Judge Ackerman's opinion in the related case of *Kronfeld v. First Jersey Nat'l Bank,* 638 F.Supp. 1454 (D.N.J. 1986), is of little assistance to us, relying as it does on the Third Circuit's more lenient application of Rule 9(b).

**7.** *Billard v. Rockwell Int'l Corp.,* 683 F.2d 51, 57 (2d Cir.1982); *Segan v. Dreyfus Corp.,* 513 F.2d 695, 696 (2d Cir.1975) (per curiam); *Crystal v. Foy,* 562 F.Supp. 422, 424 (S.D.N.Y.1983).

statements and the manner in which they misled the plaintiff, and 4) what the defendants "obtained as a consequence of the fraud."

*Posner v. Coopers & Lybrand*, 92 F.R.D. 765, 769 (S.D.N.Y.1981) (citations omitted), *aff'd*, 697 F.2d 296 (2d Cir.1982). *Accord Goldman v. Belden*, 754 F.2d 1059, 1069–70 (2d Cir.1985); *Whitbread (US) Holdings, Inc. v. Baron Philippe De Rothschild*, 630 F.Supp. 972, 982 (S.D.N.Y.1986).

Plaintiffs contend that conspiracy allegations should be treated more leniently, invoking decisions that accord conspiracy allegations more "leeway."[8] The cases relied on by plaintiffs are distinguishable: some involve conspiracy allegations other than fraud,[9] to which, of course, the Rule 9(b) requirements do not apply; in others, the court found that the underlying fraud *had* been pleaded with sufficient particularity.[10] Unlike the latter group of cases, plaintiffs' amended pleadings offer nothing in support of their conspiracy allegations other than broad and conclusory statements too vague to provide a basis for defendants to respond.[11]

These deficiencies in Counts I and II mandate dismissal. In choosing to dismiss Counts I and II with prejudice, we follow those courts that conclude that failure to particularize pleadings despite notice of deficiencies and opportunity to correct them abuses the liberal pleading policies of the Federal Rules.[12]

### Count III

Revised Count III sets forth plaintiffs' Exchange Act claims against individual brokers from whom they purchased the Project 4 & 5 bonds. Exhibit 6 consists of individualized fact sheets providing the following information from certain plaintiffs ("Exhibit 6 plaintiffs"): (1) the broker, (2) the account representative with whom they dealt, (3) the dates and locations of conversations with their account representatives, (4) the date that the misrepresentations were made and how they were communicated, and (5) the content and wording of the misrepresentations.

Applying Rule 9(b) criteria to these fact allegations, Exhibit 6 plaintiffs have satisfied the particularity requirement. The Count III claims of the other plaintiffs, however, remain deficient and are dismissed with prejudice.

Accordingly, we must consider defendants' other objections to the Count III claims of the Exhibit 6 plaintiffs.

#### Rule 12(b)(6)

Defendants next argue that the Count III claims of the Exhibit 6 plaintiffs should be dismissed under Rule 12(b)(6), because plaintiffs present no legally cognizable injury or damage.

Initially, we note that "a complaint should not be dismissed for insufficiency unless it appears to be a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Lipsky v. Com-*

---

**8.** See *Whitbread (US) Holdings, Inc. v. Baron Philippe de Rothschild*, 630 F.Supp. 972, 983 (S.D.N.Y.1986) (quoting *Kravetz v. Brukenfeld*, 591 F.Supp. 1383, 1387–88 (S.D.N.Y.1984) (quoting 2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 8.17(5), at 8–180 through 8–183 (2d ed. 1984))).

Although *Whitbread* and *Kravetz* were fraud cases and so had to reconcile Rule 9(b) with Rule 8(a), the authority they relied on did not. See 2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 8.17(5), at 8–180 through 8–183 nn. 1–7. The general statements in *Moore's* advocating greater leeway in pleading conspiracy allegations did not involve fraud.

**9.** See, e.g., *Waller v. Butkovich*, 584 F.Supp. 909, 931 (M.D.N.C.1984) (civil rights); *Strobl v. New York Mercantile Exchange*, 561 F.Supp. 379, 383

(S.D.N.Y.1983) (antitrust); *Vazquez v. Ferre*, 404 F.Supp. 815, 821–22 (D.N.J.1975) (civil rights).

**10.** See, e.g., *Whitbread (US) Holdings, Inc. v. Baron Philippe de Rothschild, supra*, 630 F.Supp. at 982 (plaintiff's complaint set forth defendant's misrepresentations in "exquisite detail").

**11.** See *Decker v. Massey–Ferguson, Ltd., supra*, (681 F.2d at 119–21); *Crystal v. Foy, supra*, 562 F.Supp. at 426; *Troyer v. Karcagi*, 476 F.Supp. 1142, 1152–53 (S.D.N.Y.1979); *Fein v. Shearson Hayden Stone, Inc.*, 461 F.Supp. 137, 142–43 (S.D.N.Y.1978).

**12.** See *Hayduk v. Lanna*, 775 F.2d 441, 445 (1st Cir.1985); *Denny v. Barber*, 576 F.2d 465, 471 (2d Cir.1978); *Crystal v. Foy, supra*, 562 F.Supp. at 433.

*monwealth United Corp.*, 551 F.2d 887, 894 (2d Cir.1976) (quoting 2A *Moore's Federal Practice* ¶ 12.08, at 2271 (2d ed. 1975)).

Assuming, as we must,[13] that plaintiffs can prove that defendants knowingly made misrepresentations about the Project 4 & 5 bonds, that plaintiffs reasonably relied on those misrepresentations, and that the misrepresentations induced plaintiffs to purchase the bonds, we must determine whether plaintiffs made adequate allegations of injury. Absent such allegations, plaintiffs' Exchange Act claims must be dismissed.[14]

■ Generally, a plaintiff's damages in an action under Rule 10b–5 are determined by using an "out-of-pocket" measure. *Elkind v. Liggett & Myers, Inc.*, 635 F.2d 156, 168 (2d Cir.1980); *In re Warner Communications Securities Litigation*, 618 F.Supp. 735, 744 (S.D.N.Y.1985), *aff'd*, 798 F.2d 35 (2d Cir.1986). Out-of-pocket loss is the difference between the price paid and the value received. *See Levine v. Seilon, Inc.*, 439 F.2d 328, 334 (2d Cir.1971).

According to defendants, the out-of-pocket measure shows that plaintiffs have suffered no damages, because the Project 4 & 5 bonds were purchased at the market price.[15] Plaintiffs, defendants assert, therefore received full value for the price they paid. Plaintiffs argue, however, that their complaint makes out a claim for a rescissory measure of damages under *Chasins v. Smith, Barney & Co.*, 438 F.2d 1167 (2d Cir.1970), and its progeny.

In *Chasins*, the court held that, although plaintiff had paid the market price for securities (and therefore had no out-of-pocket losses), plaintiff could recover the difference between his purchase price and subsequent sale price. 438 F.2d at 1173. The court reasoned that this rescissory recovery was justified when "the evil is not the price at which [plaintiff] bought but the fact of being induced to buy." *Id.* In *Chasins*, the court condemned the defendant for recommending securities to the plaintiff without disclosing its market-making role in securities. *See id.* We now must determine whether the "peculiar facts" of *Chasins*[16] make the rescissory measure of damages inapplicable to the instant case under any view of plaintiffs' complaint.

■ Liberally construed, the Count III claims allege that plaintiffs were induced to purchase bonds by defendants' misrepresentations and omissions concerning the risks of the investments. A sampling of Exhibit 6 statements broadly suggests that certain plaintiffs requested secure investments and purchased the Project 4 & 5 bonds in reliance on defendants' assurances that their investments were guaranteed by the government. Plaintiffs' prayers for relief, while not paradigms of clarity, claim loss and damages measured by the difference between purchase price and resale value of the bonds.

Decisions following *Chasins* further indicate that the rescissory theory may encompass plaintiffs' claims. In *Clark v. John Lamula Investors, Inc.*, 583 F.2d 594 (2d Cir.1978), the court affirmed a judgment for plaintiff based on a rescissory measure of damages. The defendant broker had recommended unsuitably risky securities and omitted material facts about them with intent to defraud. *See* 583 F.2d at 597–98. Relying on *Chasins*, the court approved an award of damages for the difference between the plaintiff's purchase price and subsequent resale price. *Id.* at 603. Sim-

---

**13.** *See Meyer v. Oppenheimer Management Corp.*, 764 F.2d 76, 79 (2d Cir.1985) (on motion to dismiss for failure to state claim, court must take plaintiff's allegations as true).

**14.** Section 28(a) of the Exchange Act, 15 U.S.C. § 78bb(a), limits recovery in private damage actions to "actual damages." Where a plaintiff fails to establish actual damages, his Rule 10b–5 claims must be dismissed. *See Abrahamson v. Fleschner*, 392 F.Supp. 740, 749 (S.D.N.Y.1975), *aff'd in part and rev'd in part*, 568 F.2d 862 (2d Cir.1977), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2253, 56 L.Ed.2d 414 (1978).

**15.** We do not understand plaintiffs to assert a fraud-on-the-market claim in this litigation. Plaintiffs are class members in the *In re WPPSS Securities Litigation* (M.D.L. 551) class action which is based on a fraud-on-the-market theory.

**16.** *Chasins v. Smith, Barney & Co.*, 438 F.2d 1167, 1177 (2d Cir.1970) (Friendly, J., dissenting from denial of reconsideration *in banc*).

ilarly, in *Garnatz v. Stifel, Nicolaus & Co.*, 559 F.2d 1357 (8th Cir.1977), *cert. denied*, 435 U.S. 951, 98 S.Ct. 1578, 55 L.Ed. 2d 801 (1978), the Eighth Circuit approved a rescissory measure of damages when the gravamen of the action "was not whether [plaintiff] bought the bonds for a fair price, but that he bought at all." 559 F.2d at 1360. A number of other cases have recognized the *Chasins* measure when no out-of-pocket loss has occurred.[17] We conclude, therefore, that the Exhibit 6 plaintiffs adequately state a variant of the *Chasins* broker fraud/unsuitability claims for rescissory relief in Count III.

Defendants, however, pose yet another obstacle to any recovery by plaintiffs. They argue that the rescissory award here would amount to nothing after adjustment for the decline in value of the bonds unrelated to the purported fraud, as required by *Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38 (2d Cir.), *cert. denied*, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978).

Defendants misread *Rolf.* The *Rolf* formula seeks to filter out losses due to ordinary market conditions from losses due to misconduct. 570 F.2d at 49 & n. 22. In *Rolf,* the Court suggested this could be accomplished by subtracting the overall market decline—measured by some index such as the Dow Jones industrial average or Standard & Poor's index—from the decline in the plaintiff's portfolio. *See id.* Defendants' simplification of this concept is that the economic decline in value of the Project 4 & 5 bonds should be subtracted from plaintiffs' claimed losses, resulting in a recovery of zero. Defendants' logic ap-

plied to the *Rolf* facts would also result in no recovery, as it would in every case of broker fraud, because no broker causes the stock to decline. The wrong alleged by plaintiffs is that defendants selected risky bonds and misrepresented them as a safe investment.[18] Correct application of the *Rolf* formula presumably would mean reducing plaintiffs' gross economic loss by some overall measure of the bond market, perhaps by performance of bonds of the sort plaintiffs purportedly sought to purchase.

Any decision as to the correct method to adjust damages would be premature. We merely decide today that the Exhibit 6 plaintiffs adequately allege an injury cognizable in a Rule 10b–5 action and that the *Rolf* formula does not bar their action.

### Summary Judgment

Defendants also seek summary judgment on the Count III claims of certain Exhibit 6 plaintiffs, arguing that they are barred by the applicable statutes of limitations.

■ Section 10(b) of the Exchange Act and Rule 10b–5 have no accompanying statute of limitations. Federal courts therefore apply the appropriate limitations periods of the forum state. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 210 n. 29, 96 S.Ct. 1375, 1389 n. 29, 47 L.Ed.2d 668 (1976); *Armstrong v. McAlpin*, 699 F.2d 79, 86 (2d Cir.1983). In New York, the relevant statute of limitations requires that plaintiffs sue within six years from the time their cause of action accrued or within two years from the time the fraud was, or

---

17. *See, e.g., Hatrock v. Edward D. Jones & Co.*, 750 F.2d 767, 773 & n. 4 (9th Cir.1984) (upholding jury verdict for plaintiff in fraudulent inducement action); *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir.1974) (recognizing rescissory alternative in fraudulent inducement case); *Savino v. E.F. Hutton & Co.*, 507 F.Supp. 1225, 1241 (S.D.N.Y.1981) (allegations that brokers misrepresented risk of investing in stock options in plaintiff's discretionary account, resulting · in loss, states Rule 10b–5 action); *Gordon v. Burr*, 366 F.Supp. 156, 170 (S.D.N.Y.1973) (seller of shares misrepresented that others had already paid for their shares; rescission granted), *aff'd in relevant part*, 506 F.2d 1080 (2d Cir.1974); *cf. Saxe v. E.F. Hutton & Co.*, 789 F.2d 105, 111 (2d Cir.1986) (in analogous Commodities Exchange Act action, allegations that broker misrepresen-

ted risky commodities as safe stated cause of action). See generally Jacobs, *The Measure of Damages in Rule 10b–5 Cases*, 65 Geo.L.J. 1093, 1107–08 (1977).

In class certification and class settlement cases, the *Chasins* rescissory damage alternative to out-of-pocket loss has been relied on repeatedly. *See Kaye v. Fast Food Operators*, 99 F.R.D. 161, 164–65 (S.D.N.Y.1983); *Koenig v. Smith*, 88 F.R.D. 604, 608 (S.D.N.Y.1980); *Tucker v. Arthur Andersen & Co.*, 67 F.R.D. 468, 482 (S.D.N.Y.1975).

18. In *Clark v. John Lamula Investors, Inc.*, 583 F.2d 594, 604 (2d Cir.1978), the court concluded that the *Rolf* formula was inapplicable to a fraudulent inducement claim.

with reasonable diligence should have been discovered, whichever period is longer.[19] *See Armstrong v. McAlpin, supra,* 699 F.2d at 86–87; *Stull v. Bayard,* 561 F.2d 429, 432 (2d Cir.1977), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1978). In addition, New York's "borrowing statute" provides that if a non-resident plaintiff's claim accrued outside the state, and the claim would be time-barred in that state, the shorter time limit will be applied.[20] *See Arneil v. Ramsey,* 550 F.2d 774, 779 (2d Cir.1977); *Lang v. Paine, Web-*

*ber, Jackson & Curtis, Inc.,* 582 F.Supp. 1421, 1422 (S.D.N.Y.1984). A securities fraud claim accrues in the state where the loss resulting from the misrepresentation was sustained, usually the plaintiffs' state of residence. *See Anisfeld v. Cantor Fitzgerald & Co.,* 631 F.Supp. 1461, 1465 (S.D. N.Y.1986). Accordingly, we must look to the applicable statute of limitations for each non-resident plaintiff.[21]

While state law fixes the length of the limitations period, federal law determines

19. The New York statute of limitations for fraud provides for a six-year period which "shall be computed from the time the plaintiff or the person under whom he claims discovered the fraud, or could with reasonable diligence have discovered it." N.Y. CPLR § 213(8) (McKinney 1987).

   In addition, the general statute of limitations provision provides, in part: "[W]here the time within which an action must be commenced is computed from the time when facts were discovered or from the time when facts could with reasonable diligence have been discovered, or from either of such times, the action must be commenced within two years after such actual or imputed discovery or within the period otherwise provided, computed from the time the cause of action accrued, whichever is longer." N.Y. CPLR § 203(f) (McKinney 1987).

20. The New York "borrowing statute" provides that "[a]n action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of the state or the place without the state where the cause of action accrued...." N.Y.CPLR § 202 (McKinney 1972).

21. *See Anisfeld v. Cantor Fitzgerald & Co.,* 631 F.Supp. 1461, 1465 (S.D.N.Y.1986); *Appel v. Kidder, Peabody & Co.,* 628 F.Supp. 153, 156–57 (S.D.N.Y.1986).

   Plaintiffs residing in the following states are subject to shorter limitations periods for Section 10(b) and Rule 10b–5 actions: Alabama, *White v. Sanders,* 650 F.2d 627, 633 (5th Cir.1981) (2 years); *Hunt v. American Bank & Trust Co.,* 606 F.Supp. 1348, 1353 (N.D.Ala.1985) (same), *aff'd,* 783 F.2d 1011 (11th Cir.1986); Arizona, *Semegen v. Weidner,* 780 F.2d 727, 733 (9th Cir.1985) (3 years); California, *Vucinich v. Paine, Webber, Jackson & Curtis, Inc.,* 739 F.2d 1434, 1436 (9th Cir.1984) (3 years); Colorado, *Hackbart v. Holmes,* 675 F.2d 1114, 1120 (10th Cir.1982) (3 years); Connecticut, *Clute v. Davenport Co.,* 584 F.Supp. 1562, 1577 (D.Conn.1984) (2 years); District of Columbia, *Wachovia Bank & Trust Co. v. National Student Marketing Corp.,* 650 F.2d 342, 346 (D.C.Cir.1980) (2 years), *cert. denied,* 452 U.S. 954, 101 S.Ct. 3098, 69 L.Ed.2d 965 (1981); Florida, *Nortek, Inc. v. Alexander*

*Grant & Co.,* 532 F.2d 1013, 1015 (5th Cir.1976) (2 years), *cert. denied,* 429 U.S. 1042, 97 S.Ct. 742, 50 L.Ed.2d 754 (1977); Georgia, *Friedlander v. Troutman, Sanders, Lockerman & Ashmore,* 788 F.2d 1500, 1509 (11th Cir.1986) (2 years); Illinois, *Andrews v. Heinold Commodities, Inc.,* 771 F.2d 184, 186 (7th Cir.1985) (3 years); Kansas, *Seiffer v. Topsy's Int'l, Inc.,* 64 F.R.D. 714, 716 (D.Kan.1974) (2 years), *appeal dismissed,* 520 F.2d 795, 796 (10th Cir.1975), *cert. denied,* 423 U.S. 1051, 96 S.Ct. 779, 46 L.Ed.2d 640 (1973); Kentucky, *Herm v. Stafford,* 663 F.2d 669, 678 (6th Cir.1981) (3 years); Maine, *Dyer v. Eastern Trust & Banking Co.,* 336 F.Supp. 890, 906 (D.Me.1971) (2 years); Maryland, *O'Hara v. Kovens,* 625 F.2d 15, 18 (4th Cir.1980) (1 year from reasonable date of discovery), *cert. denied,* 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981); Massachusetts, *General Builders Supply Co. v. River Hill Coal Venture,* 796 F.2d 8, 11 n. 3 (1st Cir.1986) (3 years); Minnesota, *Applebaum v. Ceres Land Co.,* 546 F.Supp. 17, 20 (D.Minn.1981) (3 years), *aff'd,* 687 F.2d 261 (8th Cir.1982), Missouri, *Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 644 F.2d 690, 692 (8th Cir.1981) (2 years); New Jersey, *Corson v. First Jersey Securities, Inc.,* 537 F.Supp. 1263, 1266–67 (D.N.J.1982) (2 years); Ohio, *Gaudin v. KDI Corp.,* 576 F.2d 708, 711–12 (6th Cir.1978) (4 years); Oklahoma, *Industrial Consultants, Inc. v. H.S. Equities, Inc.,* 646 F.2d 746, 747 (2d Cir.) (2 years), *cert. denied,* 454 U.S. 838, 102 S.Ct. 145, 70 L.Ed.2d 120 (1981); Oregon, *Williams v. Sinclair,* 529 F.2d 1383, 1387–88 (9th Cir.1975) (2 years), *cert. denied,* 426 U.S. 936, 96 S.Ct. 2651, 49 L.Ed.2d 388 (1976); Utah, *Loveridge v. Dreagoux,* 678 F.2d 870, 874 (10th Cir.1982) (3 years); Texas, *Corwin v. Marney, Orton Investments,* 788 F.2d 1063, 1068 (5th Cir.1986) (2 years); Virginia, *Gurley v. Documation, Inc.,* 674 F.2d 253, 259 (4th Cir.1982) (2 years); Washington, *Burgess v. Premier,* 727 F.2d 826, 831 (9th Cir.1984) (3 years); West Virginia, *Estate of Dearing v. Dearing,* 646 F.Supp. 903, 907 (S.D.W.Va.1986) (3 years); Wisconsin, *Sentry Corp. v. Harris,* 802 F.2d 229, 231 (7th Cir.1986) (3 years), *cert. denied,* — U.S. —, 107 S.Ct. 1624, 95 L.Ed.2d 199 (1987).

   With respect to the states of residence for other plaintiffs, no clear determination of the

when the period begins to run. *Armstrong v. McAlpin, supra,* 699 F.2d at 87; *Arneil v. Ramsey, supra,* 550 F.2d at 780. The statute of limitations for securities fraud begins to run "when the plaintiff has actual knowledge of the alleged fraud or knowledge of facts which in the exercise of reasonable diligence should have led to actual knowledge." *Phillips v. Levie,* 593 F.2d 459, 462 (2d Cir.1979) (quoting *Stull v. Bayard, supra,* 561 F.2d at 432). Thus, the statute is not tolled for a plaintiff's "leisurely discovery of the full details of the alleged scheme." *Klein v. Bower,* 421 F.2d 338, 343 (2d Cir.1970). Instead, the period runs from the time at which a plaintiff "should have discovered the general fraudulent scheme." *Robertson v. Seidman & Seidman,* 609 F.2d 583, 587 (2d Cir.1979) (quoting *Berry Petroleum Co. v. Adams & Peck,* 518 F.2d 402, 410 (2d Cir. 1975)). Moreover, plaintiffs bear the burden of proving diligence to toll the statute. *Freschi v. Grand Coal Venture,* 767 F.2d 1041, 1047 (2d Cir.1985), *vacated on other grounds,* — U.S. ——, 106 S.Ct. 3325, 92 L.Ed.2d 731 (1986).

The *Kronfeld* complaint was filed June 17, 1985[22] and the *Kirwin* complaint June 12, 1986.[23] Defendants argue that, at the latest, plaintiffs should have discovered facts that would alert them to (1) the alleged misrepresentations concerning the problems with Projects 4 and 5 and the backing for Project 4 & 5 bonds by January 22, 1982—the date Projects 4 and 5 were cancelled; and (2) the alleged misrepresentations with respect to the validity of the Participants' Agreements by May 18, 1982 —the date that the lawsuit was filed to determine the validity of the Agreements. Based on these accrual dates, the claims of those *Kronfeld* plaintiffs whose states of residence have limitations periods of three years or less and of those *Kirwin* plaintiffs whose states of residence have limitations periods of four years or less are time-barred.

Plaintiffs counter that their claims did not accrue until after June 16, 1983, when the Washington State Supreme Court ruled that the Participants' Agreements were invalid and thereby relieved the participating utilities from their obligation to pay Project 4 & 5 bondholders.[24] Plaintiffs further argue that summary judgment is inappropriate to resolve the question of reasonable diligence.

In their motion for summary judgment, defendants must establish that no genuine issue of material fact exists as to whether plaintiffs, exercising reasonable diligence, should have discovered the fraudulent scheme by the dates above. Although reasonable diligence in this context is ordinarily a question of fact for the jury, *see Intre Sport Ltd. v. Kidder Peabody & Co.,* 625 F.Supp. 1303, 1310 (S.D.N.Y.1985), *aff'd,* 795 F.2d 1004 (2d Cir.1986); *Gluck v. Amicor, Inc.,* 487 F.Supp. 608, 614 (S.D.N.Y. 1980), "the cases are legion in which summary judgment has been granted on the ground that the plaintiff should have discovered his cause of action under the securities law before the statute of limitations had run." *Campbell v. Upjohn Co.,* 498 F.Supp. 722, 730 (W.D.Mich.1980) (collecting cases), *aff'd,* 676 F.2d 1122 (6th Cir. 1982).

Defendants argue that, as a matter of law, plaintiffs are charged with knowledge of facts revealed in the Official Statements, the press, public hearings, legislative reports, and in related lawsuits. These sources, defendants argue, in the exercise of reasonable diligence should have led

appropriate statute of limitations has been made.

**22.** Plaintiffs apparently filed the *Kronfeld* complaint on Friday, June 14, 1985, after the close of business. Pursuant to General Rule 1 of the United States District Courts for the Southern and Eastern Districts of New York, papers submitted after the close of business are considered to have been filed as of 8:30 A.M. the following business day (June 17, 1985 in this case). The delay is of no importance as Fed.R.Civ.P. 6(a) extends the time until the next business day.

**23.** The *Kirwin* complaint is essentially identical to the *Kronfeld* complaint.

**24.** *Chemical Bank v. Washington Public Power Supply System,* 99 Wash.2d 772, 666 P.2d 329 (1983), *cert. denied,* 471 U.S. 1075, 105 S.Ct. 2154, 85 L.Ed.2d 510 (1985).

plaintiffs to actual knowledge of the alleged misrepresentations.

■ Initially, we reject defendants' contention that the Official Statements were sufficient as a matter of law to alert plaintiffs to the alleged misrepresentations concerning government backing for the Project 4 & 5 bonds. The difference between the instant case and *Salgado v. Piedmont Capital Corp.*, 534 F.Supp. 938 (D.P.R.1981)—the sole case on which defendants rely—illustrates why summary judgment is inappropriate on this issue.

*Salgado* involved an investment program that plaintiff investors alleged had been misrepresented as cost-free. After almost three years of discovery, defendants moved for summary judgment on statute of limitations grounds. The court granted the motion, concluding that each plaintiff knew or should have known within the limitations period that the representations were untrue. 534 F.Supp. at 948–50. The conclusion was based on a showing that plaintiffs had received information in the prospectuses explicitly contrary to the alleged misrepresentations and on evidence that plaintiffs, in direct contradiction to the alleged misrepresentations, actually had experienced having to put up additional funds. *Id.*

In contrast, here there has been no discovery. There is no showing that plaintiffs actually learned or should have learned of any of the alleged published facts.[25] Nor is there any evidence that the *Kronfeld* and *Kirwin* plaintiffs experienced the kind of direct contradiction of defendants' misrepresentations shown in the *Salgado* plaintiffs' depositions and interrogatories.

*See id.* at 949. Nor is there any information concerning the degree of investor sophistication, another factor in the *Salgado* case. *See id.* at 946. We cannot conclude, therefore, that the single line in the lengthy Official Statements, that the Bonneville Power Administration "is not purchasing any capability from the Projects," is dispositive of the guaranty issue.

■ However, the widespread publicity concerning the problems of Projects 4 and 5 with construction delays, cost overruns, mismanagement, and faulty power-need forecasts, convincingly establishes that reasonably diligent bondholders would have investigated the alleged misrepresentations about those issues by January 22, 1982. Defendants detail a plethora of articles in national news media dealing with these problems prior to the ultimate decision to terminate the projects, as well as a spate of publicity immediately afterward. In addition, public hearings and reports on Projects 4 and 5 were held prior to termination. This extensive public discussion of precisely the matter allegedly misrepresented, we think, would put any reasonably diligent plaintiff on inquiry notice.[26] Accordingly, we hold that the plaintiffs' claims for misrepresentations of the construction, planning, and management problems with Projects 4 and 5 accrued on January 22, 1982, at the latest.[27]

■ In the final category of misrepresentations, those concerning the validity of the Participants' Agreements, defendants argue that the filing of various lawsuits and attendant publicity should start the limitations clock running.[28] We cannot

---

**25.** Plaintiffs assert in their brief that many plaintiffs never received the Official Statements. A few of the Exhibit 6 statements support this assertion.

**26.** *See Armstrong v. McAlpin*, 699 F.2d 79, 86 (2d Cir.1983) ("well-publicized SEC action" deemed to put plaintiffs on notice); *Gluck v. Amicor, Inc.*, 487 F.Supp. 608, 614 (S.D.N.Y. 1980) (numerous news articles put plaintiffs on notice); *Braunstein v. Laventhol & Horwath*, 433 F.Supp. 1077 (S.D.N.Y.) (coverage in national press charges plaintiffs with knowledge), *aff'd*, 573 F.2d 1288 (2d Cir.1977).

**27.** Defendants, of course, are not foreclosed from showing that individual plaintiffs were actually aware or in the exercise of reasonable diligence should have been aware of the misrepresentations at an earlier date.

**28.** Defendants note that three lawsuits were filed concerning the validity of the Participants' Agreements:

(1) On December 22, 1981, a group of Oregon ratepayers filed suit in Lane County Circuit Court seeking to void the City of Springfield's Participant Agreement. *See DeFazio v. Washington Public Power Supply System*, 296 Or. 550,

agree. First, unlike the cases on which defendants rely, the various Participant lawsuits were not based on the same general fraudulent scheme plaintiffs allege.[29] Part of the rationale for holding that plaintiffs have constructive knowledge of other lawsuits alleging the same general fraud as plaintiffs is that if one set of plaintiffs can discover the fraudulent scheme, similarly situated plaintiffs exercising reasonable diligence should be able to discover the same information. *See, e.g., Braunstein v. Laventhol & Horwath*, 433 F.Supp. 1077, 1079 (S.D.N.Y.1977). Clearly, plaintiffs are not similarly situated with the participating utilities (or even their ratepayers). The latter are in a far better position to acquire information regarding the agreement they have signed than the bondholding plaintiffs.

Moreover, plaintiffs did not suffer any dramatic declines in the value of their bonds until the utility lawsuits were resolved. One important indicator of constructive knowledge of a general scheme employed in related lawsuits is some immediate economic impact.[30] Defendants show no such "storm warnings," *Cook v. Avien, Inc.*, 573 F.2d 685, 697 (1st Cir.1978), or "code blue factors," *Wachovia Bank & Trust v. National Student Marketing Corp.*, 650 F.2d 342, 349 (D.C. Cir.1980), *cert. denied*, 452 U.S. 954, 101 S.Ct. 3098, 69 L.Ed.2d 965 (1981), until after the Wash-

ington State Supreme Court decision invalidating the Participants' Agreements.

Finally, absent discovery on such factors as the existence of a fiduciary relationship between individual brokers and plaintiffs, sophistication of plaintiffs, and access to information, we are unwilling to foreclose plaintiffs from showing that reasonable diligence would not have revealed the misrepresentations. *See Natural Resources Corp. v. Royal Resources Corp.*, 427 F.Supp. 880, 888 (S.D.N.Y.1977).

We therefore decline to adopt the date proposed by defendants as the start of the running of the limitations period for the misrepresentations about the Participants' Agreements. As with the misrepresentations of the backing for the Project 4 & 5 bonds, the statute of limitations will be deemed to run from June 16, 1983, unless defendants, after discovery, can show earlier actual or constructive knowledge. Since these dates will dispose of the claims of certain plaintiffs, we must address plaintiffs' argument that the statute of limitations should be tolled by defendants' fraudulent concealment.

Plaintiffs' generalized and conclusory allegations of fraudulent concealment run afoul of the particularity requirements of Fed.R.Civ.P. 9(b). *See Armstrong v. McAlpin, supra*, 699 F.2d at 90. Since our prior decisions dismissing plaintiffs' com-

---

679 P.2d 1316 (1984) (*in banc*) (reversing and remanding the lower court determination).

(2) On April 23, 1982, twelve electrical cooperatives in Washington, Idaho, and Oregon filed suit in the Superior Court of Washington for Lewis County, seeking to void their Participant Agreements.

(3) On May 18, 1982, Chemical Bank, trustee for the bondholders, filed suit in the Superior Court of Washington for Kings County, requesting a declaratory judgment that Participants' Agreements were enforceable.

**29.** *See Armstrong v. McAlpin, supra*, 699 F.2d at 88 ("well-publicized SEC action ... set forth in considerable detail many of the wrongs for which appellants now seek recovery"); *Gaudin v. KDI Corp., supra*, 576 F.2d at 712 (plaintiffs were aware of five separate lawsuits brought against defendant for related securities violations); *Berry Petroleum Co. v. Adams & Peck*, 518 F.2d 402, 410 (2d Cir.1975) (SEC action and similar private actions filed against defendant

prior to plaintiffs' action); *Klein v. Shields & Co.*, 470 F.2d 1344, 1347 (2d Cir.1972) (plaintiff's own prior suit); *Braunstein v. Laventhol & Horwath, supra*, 433 F.Supp. at 1079 ("substantially similar" claims litigated against same defendants; plaintiffs had been contacted to join in suit); *In re Alodex Corp. Securities Litigation*, 392 F.Supp. 672, 682 (S.D.Iowa 1975) (class action litigation on "substantially the same grounds" preceded plaintiffs' claims; plaintiffs actually aware of grounds), *aff'd*, 533 F.2d 372 (8th Cir.1976).

**30.** *See, e.g., Armstrong v. McAlpin, supra*, 699 F.2d at 88 (commissions increased from $5,109 per quarter to $459,078 per quarter); *Berry Petroleum Co. v. Adams & Peck, supra*, 518 F.2d at 410 (stock value declined to approximately one-half of purchase price); *Hupp v. Gray*, 500 F.2d 993, 996–97 (7th Cir.1974) (60% decline in stock value); *Braunstein v. Laventhol & Horwath, supra*, 433 F.Supp. at 1079 (85% drop in value of stock).

plaints on Rule 9(b) grounds did not focus on these allegations, we grant leave to replead fraudulent concealment to those plaintiffs who alleged post-purchase conversations with their brokers. The fraudulent concealment allegations of plaintiffs whose Exhibit 6 statements did not allege post-purchase conversations are dismissed and leave to replead is denied.

### Rule 54(b)

For plaintiffs who failed to file an Exhibit 6 statement particularizing their claim, this decision will terminate all of their claims. Failing to use our Rule 54(b) power to enter final judgment would force them to await the outcome of what promises to be a lengthy pretrial and trial period in order to obtain a final ruling on their pleadings. Delay would be particularly egregious because plaintiffs' cases depend on the memories and credibility of individual brokers and customers in recalling what was represented in face-to-face conversations. Moreover, permitting appeal on the Rule 9(b) issue presents no danger of piecemeal appeals because the Exhibit 6 plaintiffs have essentially different pleadings. Delaying an appellate ruling on the Rule 9(b) dismissals until final resolution of the claims of all plaintiffs, therefore, would not aid the Court of Appeals in evaluating the dismissals. Accordingly, we grant defendants' motion for immediate entry of final judgment on the Rule 9(b) dismissals.

### Rule 11

The extensive briefing required to resolve defendants' motions belies their arguments for Rule 11 sanctions in most respects. The decision by plaintiffs' attorneys to replead the pendent state law claims, however, violated Rule 11. Our prior decisions in this case clearly differentiated between Counts I through III, which were dismissed with leave to replead, and Counts IV through VI, which were to be renewed, if at all, only in state court. Accordingly, we order plaintiffs to pay the moving defendants the amount of the reasonable expenses incurred by them in defending the pendent state law claims, including attorneys' fees.

## CONCLUSION

In summary, we make the following dispositions of defendants' motions:

(1) We grant their motion to compel arbitration as to all plaintiffs who signed arbitration agreements;

(2) We dismiss with prejudice Counts I and II as to all remaining plaintiffs, and the Count III claims of all remaining plaintiffs who did not file an Exhibit 6 statement;

(3) We deny defendants' Rule 12(b)(6) motion;

(4) We grant summary judgment as to those *Kirwin* plaintiffs residing in states with limitations periods of two years or less. In addition, we grant partial summary judgment as to claims based on misrepresentations of the construction and management problems of Projects 4 and 5 against *Kronfeld* plaintiffs residing in states with limitations periods of three years or less, and against *Kirwin* plaintiffs residing in states with limitations periods of four years or less;

(5) We grant the motion for entry of final judgments on the Rule 9(b) dismissals and deny it in all other respects; and

(6) We deny the motion for Rule 11 sanctions except as to costs incurred in defending the pendent state law claims, such costs to be paid by plaintiffs' attorneys.

The parties are directed to settle, within thirty (30) days, appropriate judgments and orders not inconsistent with this opinion, including a provision for the appointment of a Special Master if they are unable to agree on Rule 11 costs.